Ronald L. BROWN, Plaintiff,

v.

**WHEAT FIRST SECURITIES, INC., et al., Defendants.**

No. Civ. 99–CV–01776(LFO).

United States District Court, District of Columbia.

June 13, 2000.

Stephen Martin Kohn, David Keith Colapinto, Kohn, Kohn, & Colapinto, P.C., Washington, DC, for Ronald L. Brown.

Stephen Gregory Topetzes, Paul Gonson, Kirkpatrick & Lockhart, L.L.P., Washington, DC, for Wheat First Securities, Inc. First Union Corp.

Steven Keith Davidson, Steptoe & Johnson, L.L.P., Washington, DC, for Ferris Baker Watts, Inc.

Benjamin Sorrells Boyd, Bruce T. Carton, Piper Marbury Rudnick & Wolfe, LLP, Washington, DC, for Legg Mason Wood Walker, Inc.

## *MEMORANDUM*

OBERDORFER, District Judge.

Plaintiff Ronald L. Brown, a former employee of defendant Wheat First Securities, Inc., is suing Wheat First, First Union Corp., and several individuals employed by Wheat First for conspiracy in violation of Section 2 of the Civil Rights Act of 1871, 17 Stat. 13 (April 20, 1871), wrongful termination, and tortious interference with economic advantage. Compl. Three motions are pending: (1) defendants Wheat First, First Union, and Marshall Wishnack moved to compel arbitration on the authority of 9 U.S.C. § 4 (1994) ("A party aggrieved by the alleged

failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement"), or in the alternative, for dismissal of plaintiff's first amended complaint (Dkt.28); (2) defendants Wheat First and First Union moved to confirm the arbitration award pursuant to 9 U.S.C. § 9 ("If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order confirming the award unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.") (Dkt.29); and (3) invoking 9 U.S.C. § 10(a)(4), plaintiff moved to vacate that award ("In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration— ... (4) Where the arbitrators exceeded their powers ...") (Dkt.26). All motions have become ripe. For the reasons stated below, an accompanying order denies plaintiff's motion to vacate the arbitration award, grants defendants' cross-motion to confirm the award, grants defendants' motion to compel arbitration of plaintiff's statutory claims with instructions to the arbitrators with respect to the employer's responsibility for arbitrators' fees and expenses, and dismisses plaintiff's complaint as moot.

## I.

Defendant Wheat First employed plaintiff as a registered representative in its Washington, D.C., office from November 13, 1991, until February 21, 1997. Compl. 13–14. At the time of his hiring, plaintiff completed and signed a Uniform Application for Securities Industry Registration or Transfer (Form U–4) in order to register with the National Association of Securities Dealers (NASD). Dkt. 28, Ex. 1. In signing the Form U–4, plaintiff agreed "to arbitrate any dispute, claim or controversy that may arise" between himself and his employer, "that is required to be arbitrated" under NASD rules. *Id.* at p. 4, ¶ 5.

Plaintiff alleges that, during his employment at Wheat First, he became aware of "numerous illegal activities," including, *inter alia,* unauthorized, excessive, and unsuitable trading in customer accounts, improper relationships with customers, and failure to report customer complaints to legal and regulatory authorities. Compl. 18–19. In October 1996, plaintiff reported the alleged misconduct to his manager and to Wheat First's compliance officer. Compl. 23–26. In November 1996, plaintiff communicated to the Securities and Exchange Commission details of the alleged violations of law occurring at Wheat First. Compl. 30–32.

On February 21, 1997, Wheat First terminated plaintiff's employment for "lack of production." Compl. 38. On February 17, 1998, plaintiff filed with the NASD's Office of Dispute Resolution a Statement of Claim against Wheat First that included allegations of wrongful termination (retaliation), breach of implied contract, defamation, slander, and tortious interference with business relationships. Dkt. 28, Ex. 2. Plaintiff's 1998 Statement of Claim did not allege that Wheat First had violated any federal statute. *See id.* At the time he filed the Statement of Claim, plaintiff signed a Uniform Submission Agreement, which submitted "the present matter in controversy, as set forth in the attached statement of claim ... to arbitration in accordance with the Constitution, By-

Laws, Rules, Regulations, and/or Code of Arbitration Procedure" of the NASD. Dkt. 28, Ex. 3. The Uniform Submission Agreement also included the following provision: "The undersigned parties further agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement and further agree that a judgment and any interest due thereon, may be entered upon such award(s) and, for these purposes, the undersigned parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment." *Id.* On June 29, 1998, after it filed its answer to plaintiff's Statement of Claim, defendant Wheat First also signed the Uniform Submission Agreement. Dkt. 28, Ex. 5.

The original arbitration hearing, scheduled to begin March 22, 1999, was adjourned at the request of the parties. Dkt. 14, Addendum p. 5. Rule 10319 of the NASD Code of Arbitration Procedure sets forth the procedure for adjournments. National Association of Securities Dealers Code of Arbitration (visited May 2, 2000) <*http://www.nasdr.com/2820b.htm10319*>. Rule 10205(c) states that the arbitrator determines who bears the costs for adjournments. *Id.* at htm# 10205. Pursuant to these rules, the arbitrators assessed $1,500 in fees, requiring each party to pay $750. Dkt. 14, Addendum p. 5.

Plaintiff filed an "Opposition to Order Directing [Plaintiff] to Pay for Costs Related to Arbitration," requesting that the arbitration panel either: (1) render a declaratory judgment ending arbitration and allowing plaintiff to pursue his case in a court of competent jurisdiction, or (2) issue an order that plaintiff was not required to pay any fees in the proceedings. *Id.* at p. 1. On April 12, 1999, the NASD's Office of Dispute Resolution informed plaintiff that the imposition of adjournment fees was consistent with the NASD's Code of Arbitration Procedure, and reiterated the requirement that plaintiff pay $750 in adjournment fees. *Id.* On June 29, 1999, the day before plaintiff filed his original complaint in this matter, plaintiff moved again for the arbitrators to enter a declaratory judgment and to find that, because plaintiff had been ordered to pay part of the adjournment fees, the NASD "no longer ha[d] jurisdiction and that the plaintiff may pursue his case in a court of competent jurisdiction." *Id.* at p. 3. On September 7, 1999, the arbitrators, in a letter sent by the Office of Dispute Resolution, denied plaintiff's motion without discussion. *Id.* at p. 32. On September 13, 1999, the arbitration hearing commenced. Plaintiff did not attend the proceeding, sending his counsel, instead, solely to restate his objections to the NASD's jurisdiction over the matter. Dkt. 14, p. 6. On November 9, 1999, after hearing only defendants' version of the case, the arbitrators dismissed plaintiff's Statement of Claim with prejudice, requiring that each party bear its own costs and expenses. Dkt. 14, Addendum, p. 54–57. The arbitrators assessed Wheat First $9,985, and obligated plaintiff to pay $6,365, consisting of a $500 initial filing fee, a $750 adjournment fee, $5,100 in forum fees, and $15 for administrative costs. *Id.* at 57.

Meanwhile, on June 30, 1999, plaintiff had filed his original complaint in this Court. On December 13, 1999 (after the November 9, 1999, arbitration award), he filed his first amended complaint, asserting common law claims similar to those in his Statement of Claim and, for the first time, alleged a conspiracy in violation of Section 2 of the Civil Rights Act of 1871.

## II.

Plaintiff now moves to vacate the November 9 arbitration award, arguing that the arbitrators "exceeded their powers" by failing to stay the arbitration proceeding until a court of competent jurisdiction ruled on plaintiff's legal challenge to arbitrability that resulted from the arbitrators' assessment of fees on plaintiff. Dkt. 26, p. 1, 5. Defendants move to confirm the arbitration award, which dismissed with preju-

dice plaintiff's common law claims (wrongful termination, breach of implied contract, defamation, slander, and tortious interference). Dkt. 28, Ex. 2.

Plaintiff relies on *Cole v. Burns International Security Services*, 105 F.3d 1465 (D.C.Cir.1997). In that case, after being fired from his job, plaintiff filed a complaint in federal court against his employer, alleging, *inter alia*, racial discrimination in violation of Title VII. *Id.* at 1469. Defendant moved to dismiss the complaint and compel arbitration of the dispute, pointing to a "Pre–Dispute Resolution Agreement" between the parties, which authorized the defendant employer to choose to arbitrate any claims arising out of the termination of employment. *Id.* The district court found that the Agreement covered plaintiff's claims, granted defendant's motion to compel arbitration, and dismissed plaintiff's complaint. *Cole v. Burns Int'l Sec. Serv.*, No. 95–1785 (D.D.C. Jan. 31, 1996).

A divided court of appeals affirmed the district court subject to a proviso. *Cole*, 105 F.3d at 1488. The court interpreted the arbitration agreement as "requiring [defendant] to pay all of the arbitrator's fees necessary for a full and fair resolution of [plaintiff's] statutory claims."[1] *Id.* at 1485. The court ruled that plaintiff "could not be required to agree to arbitrate *his public law claims* as a condition of employment if the arbitration agreement required him to pay all or part of the *arbitrator's fees and expenses*." *Id.* at 1485 (emphasis added). The court noted: "It would undermine Congress's intent to prevent employees who are seeking to·vindicate *statutory* rights from gaining access to a judicial forum and then require them to pay for the services of an arbitrator when they would never be required to pay for a judge in court." *Id.* at 1484 (emphasis added). The court concluded, "an arbitrator's compensation and expenses must be paid by the employer alone." *Id.* at 1481.

The *Cole* court defined the compensation and expenses for which the employee had no obligation to pay to include the arbitrator's honorarium, the arbitrator's expenses, and any other costs associated with the arbitrator's services. *Id.* at 1484 n. 15. Those were the employer's responsibility. The court distinguished arbitrator's fees from other fees, such as filing fees, expenses, or administrative fees, all of which employees could be required to pay. *Id.* at 1481, 1483–4.

Plaintiff argues that *Cole* requires that the arbitrators' award, which assessed plaintiff $6,365 in fees, should be vacated. However, this case is different from *Cole* in one important respect: plaintiff's Statement of Claim did not include any statutory claim, which was the heart of the complaint in *Cole*. In reaching its decision that the arbitration agreement could be interpreted to require the employer to pay all of the arbitrator's fees and expenses, the *Cole* court focused on the fact that the plaintiff had raised statutory claims: "Thus, in *Gilmer*, the Supreme Court endorsed a system of arbitration in which *employees are not required to pay for the arbitrator assigned to hear their statutory claims.* There is no reason to think that the Court would have approved arbitration in the absence of this arrangement. Indeed, we are unaware of any situation in American jurisprudence in which a beneficiary of a federal statute has been required to pay for the services of the judge assigned to hear her or his case." *Cole*, 105 F.3d at 1484 (emphasis added) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)). The *Cole* court found it was "unacceptable" for an employee to pay arbitrators' fees when pursuing his or her statutory claims, because "such fees are unlike anything [the employee] would have

---

1. Judge Henderson dissented from this holding, challenging the majority's reading of the applicable rules and arguing that the agreement to arbitrate should be enforced "without judicial reformation." *Cole*, 105 F.3d at 1490–91.

to pay to pursue his ***statutory claims*** in court." *Id.* (emphasis added). Thus, the *Cole* holding does not control here, because the plaintiff did not raise statutory claims in his Statement of Claim. Instead, based on the Form U–4 signed by the parties, the NASD rules on fees govern. *See* Dkt. 28, Ex. 1, p. 4, ¶ 5.

The relevant NASD rules give arbitrators discretion in assessing the amount of and who pays certain fees. National Association of Securities Dealers Code of Arbitration (visited May 2, 2000) <*http://www.nasdr.com/2820b. htm# 10205*>. Arbitrators determine who pays forum fees, adjournment fees, costs for pre-hearing proceedings, and other miscellaneous fees. *Id.* (Rule 10205(c)). Pursuant to Rule 10205(c), the arbitration panel in this case assessed plaintiff with half of the costs relating to the March 22, 1999, adjournment requested by both parties, as well as an initial filing fee, forum fees, and administrative costs. Dkt. 14, Addendum.

■ A review of the administrative record, the *Cole* decision, and the applicable NASD rules establishes that the arbitration panel acted within the scope of its authority in dismissing plaintiff's Statement of Claim with prejudice and in assessing plaintiff with $6,365 in fees. The panel did not "exceed their powers" within the meaning of 9 U.S.C. § 10(a)(4) by refusing to stay the arbitration proceeding based on plaintiff's challenge to the assessment of fees. Plaintiff challenged the arbitrators' decision based on the erroneous assumption that *Cole* ousted the arbitrators' authority because they had assessed him $750 as his share of the adjournment fees. If the result of plaintiff's challenge was an *ex parte* arbitration, that is no fault of the arbitrators. Plaintiff left them no reasonable alternative, as he absented himself from the arbitration hearing and precluded his counsel from making a defense on the merits.

If an arbitration award cannot be vacated pursuant to 9 U.S.C. § 10 or modified pursuant to 9 U.S.C. § 11, the award must be confirmed. 9 U.S.C. § 9; *Denver and Rio Grande Western Railroad Company v. Union Pacific Railroad Company*, 868 F.Supp. 1244, 1252 (D.Kan.1994) (citing *Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698, 707–08 (2d Cir.1985)). A review of the criteria for vacation under § 10 and for modification under § 11 establishes that there is no reason to vacate or modify the November 9, 1999, award. Accordingly, an accompanying order grants defendants' cross-motion to confirm that award.

## III.

Defendants Wheat First, First Union, and Wishnack also move to dismiss or, in the alternative, to compel plaintiff to arbitrate the federal statutory claims asserted in the first amended complaint.

Count One of that complaint alleges that defendants "conspired by threat and intimidation to delay, hinder and prevent the proper execution of the laws of the United States ... by harassing, terminating, and blacklisting [plaintiff] upon learning that [plaintiff] had 'blown the whistle' on the illegal practices of Wheat First...." Compl. 56. In Counts Two and Three, plaintiff alleges that defendants "conspired to deny employment to [plaintiff]" by contacting two potential employers regarding plaintiff's contacts with the Securities and Exchange Commission. Compl. 64, 73. Plaintiff maintains that these actions by defendants constitute violations of the uncodified portion of Section 2 of the Civil Rights Act of 1871, which states in relevant part: "if two or more persons ... shall conspire together ... by force, intimidation, or threat to prevent, hinder, or delay the execution of any law of the United States, ... each and every person so offending shall be deemed guilty of a high crime." 17 Stat. 13 (April 20, 1871), Section 2, Cl. 2.

At the April 5, 2000, motions hearing, plaintiff argued that, although the "prevent, hinder or delay" clause of Section 2 is

**6**

not codified, it creates an actionable claim. Plaintiff cites no cases, and concedes none exist, recognizing a claim under this uncodified portion of Section 2. *See* Dkt. 33.

■ Even if plaintiff established that a cause of action exists under the uncodified portion of Section 2, plaintiff must arbitrate those claims. The Federal Arbitration Act states, in relevant part: "A written provision in ... a contract evidencing a transaction·involving commerce to settle by arbitration a controversy thereafter arising out of such a contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act authorizes judicial enforcement of arbitration agreements where a party has failed, neglected, or refused to arbitrate. 9 U.S.C. § 4; *Perry v. Thomas,* 482 U.S. 483, 485 n. 1, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987). The Act establishes "a federal policy favoring arbitration," *Shearson/American Express v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (citing *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)); and the Act requires a district court to direct parties to proceed to arbitration on issues with respect to which they have signed an arbitration agreement. *Dean Witter Reynolds, Inc., v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). An agreement to arbitrate survives the termination of employment and covers the arbitration of wrongful termination claims, as well as claims for post-termination tortious conduct. *See Zandford v. Prudential–Bache Sec., Inc.,* 112 F.3d 723 (4th Cir.1997).

When defendant Wheat First hired plaintiff in 1991, he registered with the NASD. Dkt. 28, Ex. 1. As noted, in his registration application (Form U–4), plaintiff subscribed to a provision in which he agreed to arbitrate any claim required to be arbitrated by the NASD Code of Arbitration Procedure. *Id.* at p. 4, ¶ 5. In addition, plaintiff and defendant signed a Uniform Submission Agreement, submitting plaintiff's claims to arbitration under the same rules. Dkt. 28, Ex. 3. NASD Rule 10201(a) specifically mandates the arbitration of claims arising out of the termination of employment of a registered representative, with the exception of employment discrimination claims.[2] Dkt. 28, Ex. 4.

Plaintiff argues that his claims under Section 2 of the Civil Rights Act of 1871 are employment discrimination claims, and that, based on NASD Rule 10201(b), he is· not required to arbitrate them. However, Counts One, Two, and Three are more akin to obstruction of justice claims. As noted, plaintiff brings his statutory claims under the "prevent, hinder, or delay the execution of any law of the United States" clause in Section 2 of the Civil Rights Act of 1871. This uncodified provision is similar to the codified portion of Section 2, entitled "Obstructing justice," which creates a cause of action prohibiting conspiracy to obstruct justice by intimidating parties, witness, or jurors in federal court proceedings. *See* 42 U.S.C. § 1985(2) (prohibiting "two or more persons" from conspiring "to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court ..."); *see also Britt v. Suckle,* 453 F.Supp. 987, 990–91 (E.D.Tex.1978) (holding that plaintiffs stated a cause of action under 42 U.S.C. § 1985(2) for conspiracy to obstruct the due course of justice where plaintiffs alleged that defendants, *inter alia,* conspired to prevent their employees from seeking vindication of their legal right to recover for injuries caused by defendant's negligence). Thus, even if plaintiff states a claim under the uncodified portion of Section 2, it is for

---

2. Rule 10201(b) states that a claim alleging employment discrimination, including a sexual harassment claim, in violation of a statute is not required to be arbitrated, but may if the parties agree to arbitrate it. Dkt. 28, Ex. 4.

obstruction of justice, not employment discrimination.

■ The Supreme Court has ruled that statutory claims may be "the subject of an arbitration agreement, enforceable pursuant to the [Federal Arbitration Act]." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). In addition, *Cole* supports the arbitration of statutory claims as long as an employee is not required to pay for an arbitrator's fees and expenses. It is undisputed that plaintiff entered into an agreement to arbitrate any claim required to be arbitrated under the NASD rules. Dkt. 28, Ex. 3. Because the NASD rules require arbitration of claims arising out of the termination of employment, and because plaintiff's novel statutory claims are not strictly employment discrimination claims, plaintiff must arbitrate Counts One, Two, and Three in his complaint. As a result, defendants' motion to compel arbitration shall be granted. In conducting the arbitration of plaintiff's statutory claims, the panel selected should heed the teaching of *Cole* that, in this Circuit, the obligation to compensate arbitrators for their services and reimburse their expenses falls entirely upon the employer. *See supra* pp. 4–5.

Because defendants' motion to confirm the arbitration award, which dismissed with prejudice plaintiff's common law claims, shall be granted and a judgment entered, and because defendants' motion to compel arbitration of plaintiff's statutory claims shall be granted, plaintiff's amended complaint is now moot; an accompanying order dismisses it.

### ORDER

There are three pending motions in this matter. Defendants' Wheat First, First Union Corporation, and Marshall Wishnack move to compel arbitration, or in the alternative, to dismiss plaintiff's first amended complaint (Dkt.28). Defendants' Wheat First and First Union move to confirm arbitration award (Dkt.29). Plaintiff moves to vacate arbitration award (Dkt.26). For the reasons stated in the accompanying Memorandum, it is this 13th day of June 2000, hereby

ORDERED: that plaintiff's motion to vacate arbitration award is DENIED, and it is further

ORDERED: that defendants' cross-motion to confirm arbitration award is GRANTED, so that it is further

ORDERED: that JUDGMENT is entered pursuant to the November 9, 1999, award of the panel of National Association of Securities Dealers, Inc., arbitrators, and it is further

ORDERED: that defendants' motion to compel arbitration of plaintiff's statutory claims (Counts 1–3) is GRANTED, and it is further

ORDERED: that the new arbitration panel shall assess arbitrator's fees and expenses consistent with *Cole v. Burns International Security Services*, 105 F.3d 1465 (D.C.Cir.1997), and the accompanying Memorandum, and it is further

ORDERED: that plaintiff's amended complaint is DISMISSED as moot.