Ronald L. BROWN, Appellant/Cross–Appellee,

v.

WHEAT FIRST SECURITIES, INC., et al., Appellees/Cross–Appellants.

Nos. 00–7171 and 00–7173.

United States Court of Appeals, District of Columbia Circuit.

Argued April 13, 2001.

Decided July 31, 2001.

Stephen M. Kohn argued the cause for appellant/cross-appellee. With him on the briefs were Michael D. Kohn and David K. Colapinto.

Paul Gonson argued the cause for appellees/cross-appellants. With him on the briefs were Stephen G. Topetzes and Rebecca L. Kline. Teri L. Nelson entered an appearance.

Before: STEPHEN F. WILLIAMS, GINSBURG and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

In *Cole v. Burns International Security Services*, 105 F.3d 1465 (D.C.Cir.1997), we held that an employee who agrees to arbitration of disputes as a condition of employment and who makes a claim based on federal statutory rights may not be charged certain fees and expenses for arbitration of the claim, at least where that condition of employment was demanded by an employer not subject to regulatory oversight. See *LaPrade v. Kidder, Peabody & Co., Inc.*, 246 F.3d 702, 704 (D.C.Cir.2001). This case raises the issue whether *Cole* embraces or should be extended to non-statutory state law claims that are grounded in a "public policy ratio-nale." We hold that the logic of *Cole* does not reach so far.

\* \* \*

Appellant Ronald Brown was employed by the Washington, D.C. office of Wheat First Securities, a member of the National Association of Securities Dealers ("NASD"), from November 1991 until his termination with three days' notice in February 1997. When Brown signed on with Wheat First, he executed the NASD "Uniform Application for Securities Industry Registration or Transfer," commonly known as Form U–4, which includes a mandatory arbitration clause.

In February 1998 Brown filed a claim under his arbitration agreement seeking $25,000,000 in damages for alleged wrongful termination, breach of implied contract, defamation, slander and tortious interference. In support of his wrongful termination claim, he argued that the District of Columbia courts have created a "whistleblower" exception to the employment-at-will rule, and that Wheat First had fired him for alerting the Securities and Exchange Commission to what he perceived to be illegal activities occurring at Wheat First. He paid a $500 non-refundable filing fee and a $1,500 hearing deposit. He also signed a Uniform Submission Agreement, agreeing to the arbitration of his claims under the NASD's rules. On February 11, 1999 during a pre-trial conference, the parties jointly requested a postponement of the final hearing, then scheduled for March 1999. The panel imposed an "adjournment fee" of $1,500 and assessed each party $750.

The final hearing was later rescheduled for September 13, 1999. But in April 1999 Brown filed an objection to the fee assessment, arguing that because he was pursuing "public law" claims, *Cole* prohibited any assignment of arbitration fees to him.

The NASD rejected this theory. On June 29 and 30, 1999, respectively, Brown filed a second objection with the NASD and filed his claims in district court, for the first time alleging a violation of the Civil Rights Act of 1871 in addition to the claims previously brought to arbitration.

On September 7 the NASD denied Brown's second motion. "Not willing to participate" in the arbitral proceedings, Brown sought on September 10 to cancel the agreement to arbitrate contained in Form U–4 and on September 12 to have the arbitrators dismiss the claim without prejudice. On September 13 his attorney appeared before the arbitration panel to preserve objections, but didn't otherwise participate. On November 9, 1999 the arbitration panel dismissed his claims with prejudice and assessed him a fee of $6,365, which included costs that under *Cole* are considered arbitrators' fees. See *Cole*, 105 F.3d at 1484 n. 15 (defining such fees).

Brown then filed a motion in the district court proceeding to vacate the arbitration award; Wheat First responded with a motion to confirm the award. The district court granted the motion to confirm and denied Brown's motion to vacate, concluding that *Cole* applies only to statutory claims. *Brown v. Wheat First Securities, Inc.*, 101 F.Supp.2d 1, 2–5 (D.D.C.2000). On the basis of a Wheat First motion filed prior to the arbitrators' dismissal of Brown's claims, the district court also ordered arbitration of the newly-raised Civil Rights Act claims, but required that they be arbitrated on terms consistent with *Cole*. *Brown*, 101 F.Supp.2d at 7. Brown appeals the district court's confirmation of the arbitrators' dismissal and the denial of his motion to vacate. *Id.* at 5–7. Wheat First cross appeals the compelled arbitration, arguing that once the arbitration award was confirmed, the Civil Rights Act claims were precluded.

* * *

Brown's principal claim of error rests on the assertion that *Cole* applies to his truncated arbitration with Wheat First, either by its own terms or because its logic must extend to state common law claims that are rooted in "public policy." We assume in Brown's favor that the Supreme Court's recent decision in *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), finding that a party claiming that arbitration would be "prohibitively expensive" must at least show "the likelihood of incurring such costs," *id.* at 522, leaves *Cole* fully intact. We also assume in his favor that his whistleblower claim would qualify as an exception to the employment-at-will doctrine under the principles of District of Columbia Law elucidated in *Carl v. Children's Hospital*, 702 A.2d 159 (D.C.1997). Nonetheless, both Brown's arguments fail.

*Cole* involved claims of discrimination under Title VII of the Civil Rights Act of 1964. Acknowledging that the Supreme Court in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), had "made clear that, as a general rule, statutory claims are fully subject to binding arbitration," *Cole*, 105 F.3d at 1478 (quoting *Gilmer*, 500 U.S. at 26, 111 S.Ct. 1647), we also noted that "*Gilmer* cannot be read as holding that an arbitration agreement is enforceable no matter what rights it waives or what burdens it imposes," *id.* at 1482. The arbitration agreement will be valid "so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum." *Id.* at 1481 (quoting *Gilmer*, 500 U.S. at 28, 111 S.Ct. 1647 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 637, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985))) (alteration in original). As to fees, we found that "it would undermine Con-

gress's intent to prevent employees who are seeking to vindicate statutory rights from gaining access to a judicial forum and then require them to pay for the services of an arbitrator when they would never be required to pay for a judge in court." *Cole*, 105 F.3d at 1484. Accordingly we interpreted the arbitration agreement as requiring the employer to pay the arbitrator's fees. See *id.* at 1485.

█ In arguing that *Cole*'s holding extends to his non-statutory claims, Brown relies exclusively on the fact that *Cole* on occasion appears to use the phrases "public law" and "public rights" interchangeably with "statutory law" and "statutory rights." He contends that "public" carries a broader meaning than "statutory" and that this broader meaning should be given to the holding of the case. We think that Brown reads too much into this potentially expansive language.

None of these terms has a sharply defined meaning. At oral argument, for example, Brown offered a definition of "public right" that he attributed (without specific citation) to Black's Law Dictionary: "Enforcement of rights in cases where the state is regarded as the subject of the right or the object of the duty." The 7th edition offers a narrower concept: "A right belonging to all citizens and usu. vested in and exercised by a public office or political entity." Black's Law Dictionary 1324 (7th ed.1999). For public law, Black's says: "The body of law dealing with the relations between private individuals and the government, and with the structure and operation of the government itself; constitutional law, criminal law, and administrative law taken together." *Id.* at 1244 (7th ed.1999). While totally different, both of these published definitions have in common the feature that they seem not to include the District of Columbia's whistleblowing doctrine.

Even more to the point, our opinion in *Cole* is limited at vital points to statutory rights. For instance, when discussing the protections that *Gilmer* suggests are necessary, the opinion refers only to the non-waivability of the substantive protections of statutory rights and of access to a neutral forum in which to enforce them. See *Cole*, 105 F.3d at 1482. It nowhere mentions the waivability of or access to a forum to enforce non-statutory "public law." The court framed the issue as:

[C]an an employer condition employment on acceptance of an arbitration agreement that requires the employee to submit his or her *statutory* claims to arbitration and then requires that employee to pay all or part of the arbitrator's fees?

*Id.* at 1483 (emphasis added).

Further, in *Gilmer* the Supreme Court determined that compulsory arbitration pursuant to an employment agreement is not inconsistent with the Age Discrimination in Employment Act, the federal statute in question there. *Gilmer*, 500 U.S. at 26–33, 111 S.Ct. 1647. In *Cole* we defined our task as resolving an "issue not raised by the agreement in *Gilmer*," 105 F.3d at 1483, 105 F.3d 1465, namely the fees issue. It would be quite a contortion of *Cole* to find that it had addressed a far broader subject than the case that it set out simply to refine. See also *LaPrade*, 246 F.3d at 708 (assuming that arbitration assessment of fees for arbitration of non-statutory claims would not be subject to *Cole*).

█ We also see no basis for extending *Cole*. As we have explained, our central rationale—respecting congressional intent—does not extend beyond the statutory context. Moreover, by enacting the Federal Arbitration Act, Congress "manifest[ed] a 'liberal federal policy favoring arbitration agreements.'" *Gilmer*, 500 U.S. at 25, 111 S.Ct. 1647 (quoting *Moses*

*H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). The Act also pre-empted state restrictions on the enforcement of arbitration agreements. See *Allied-Bruce Terminix Cos., Inc. v. Dobson,* 513 U.S. 265, 272, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); *Southland Corp. v. Keating,* 465 U.S. 1, 10–16, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). *Gilmer,* as we've seen, framed the question as whether dispute resolution under the FAA was consistent with the federal right-creating statute in question. See also, e.g., *Green Tree,* 121 S.Ct. at 521, 121 S.Ct. 513 ("[W]e first ask whether the parties agreed to submit their claims to arbitration, and then ask whether Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.") (internal citations omitted). For a common law claim under District of Columbia law, any such inconsistency would be resolved in favor of the only federal law involved, the FAA.

Brown repeatedly urges that the D.C. Court of Appeals explicitly grounded its whistleblower exception in a "public policy" rationale. If this criterion controls, it is hard to see what falls outside it. All claims not based on contract—including, for example, the defamation and tortious interference claims that Brown asserted but does not link to his fees theory—implement values that society has in one way or another thought deserving. Even contract, although the branch of law most dependent on and deferential to individual choice, rests ultimately on social decisions to support fulfillment of promises either as a good in itself or as an instrumental good, facilitating people's investment in projects that depend on others' adherence to their promises. Further, even if the exception identified by the D.C. court were somehow special, it is inconsequential as a measure of *Congress*'s interest in the stated policy. While Congress has enacted specific whis-

tleblower protections, Brown never here asserts that he falls within any of them.

Brown also nowhere asserts that D.C. law creates a *Cole* like requirement for its own common law "public policy" causes of action. Perhaps this omission is because state restrictions on arbitration are pre-empted by the Federal Arbitration Act. See *Allied-Bruce,* 513 U.S. at 272, 115 S.Ct. 834. Conceivably the rule Brown proposes could arise as part of the District of Columbia's law and yet escape pre-emption by being classified as a limitation on the arbitration *procedures,* rather than on the enforcement of agreements. See *Southland,* 465 U.S. at 11 n. 6, 104 S.Ct. 852. Because neither party raised this issue, we need not address it.

Finally Brown asserts that because Congress in 1901 granted power to the D.C. courts to enforce the common law, see Act of March 3, 1901, 31 Stat. 1189 (1899–1901), in the District of Columbia "common law and statutory claims are on the same footing." Obviously the District of Columbia's possession of congressionally granted authority to create common law does not turn all its doctrines into the equivalent of federal statutes, anymore than the Constitution's preservation of state lawmaking authority turns all state laws into federal constitutional law.

In short, the proposed extension of *Cole* would significantly alter the terms of the Federal Arbitration Act, imposing a serious procedural limit on a wide (but unpredictable) range of arbitration claims, all without the slightest signal from Congress.

\* \* \*

Brown makes two secondary arguments that need not detain us long. He argues, first, that even if he loses on the *Cole* claim the arbitration ruling should be vacated because the arbitrators lost jurisdiction when—in the middle of the arbitration that

he had initiated—he went to court with a challenge to the arbitrability of his claims based on *Cole*. This loses on a superfluity of grounds, the simplest of which is that Brown's was a *losing Cole* claim.

 Brown also asserts that the failure of one of the arbitrators to timely disclose a tangential relationship to one of the lawyers for Wheat First requires vacatur of the arbitration award. The NASD rules require arbitrators to disclose past or present relationships with any of the parties, counsel, or witnesses. See NASD Code of Arbitration Procedure Rule 10312. A party then has ten days after the announcement of the arbitrators to make a peremptory strike against one of the arbitrators. See *id.* Rule 10311. Several months after the initial disclosures but still months before the hearing, one of the arbitrators disclosed that she was the account executive of a discretionary brokerage account for a partner of the law firm representing Wheat First in this matter, and that more than 10 years earlier her firm had acted as investment banker for corporate issuers using that firm (or a predecessor law firm) as securities counsel.

Brown claims that this late disclosure deprived him of his right to exercise his peremptory strike. But the cases cited in support of this proposition all involved revelations made after the *award* had been made, and are therefore inapplicable here. See, e.g., *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968). Brown fails to show that he requested an extension of the time available to use his peremptory strike. Nor does he show that he used his peremptory against another arbitrator, which would at least explain a belief (which he nowhere asserts) that he had no peremptory left. His only written communication on the matter (Brown claims verbal objections that are in the record only to the extent his letter and the NASD

response make reference to them) requested only removal *for cause*. The NASD rejected this request, and Brown fails to even allege here that the connections disclosed would justify removal for cause.

\* \* \*

 Wheat First argues on cross appeal that Brown's Civil Rights Act claim—which first appeared in a district court complaint filed after commencement of the arbitration—is barred by claim preclusion. Thus, it argues, the district court should not have ordered arbitration on the claim, but rather should have dismissed it. We agree.

Brown's civil rights claim, alleging a conspiracy to prevent him from reporting criminal wrongdoing, arises out of essentially the same set of events that were the subject of his original arbitral claims. It is clear that final adjudication of those claims would bar the civil rights claim, see, e.g., *Schattner v. Girard, Inc.*, 668 F.2d 1366, 1368–69 (D.C.Cir.1981), so long as Wheat First hasn't forfeited its claim preclusion objection.

The record plainly shows that it did not. Wheat First has not yet filed its answer to Brown's district court complaint. "[I]f a party that fails to assert res judicata in a [pre-answer] motion is sleeping on its rights, it is an inconsequential catnap." *Stanton v. District of Columbia Court of Appeals*, 127 F.3d 72, 77 (D.C.Cir.1997). Thus there was no forfeiture.

We will assume in Brown's favor that the issue was raised for the first time on appeal. In *Stanton,* we allowed a party to raise res judicata for the first time on appeal where there was no forfeiture and the claim could be successfully raised below on remand. See *id.* at 77 ("We can conceive of no reason for such judicial volleyball."). Concern for the efficient use of adjudicative resources seems even more

compelling here, where in theory the defense would be shipped off to arbitration, presumably to return to district court on similar cross motions.

Brown asserts that he will be prejudiced if we find the claim preclusion defense properly before us because it will mean the dismissal of his last remaining claim. But the only prejudice that Brown will suffer is the prejudice that comes from having a losing argument.

The order confirming the arbitration award is affirmed and the order compelling arbitration of the statutory claim is vacated and remanded with instructions to dismiss the complaint.

*So ordered.*