United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued April 13, 2001 Decided July 31, 2001 

 No. 00-7171

 Ronald L. Brown, 
 Appellant/Cross-Appellee

 v.

 Wheat First Securities, Inc., et al., 
 Appellees/Cross-Appellants

 Consolidated with 
 00-7173

 Appeals from the United States District Court 
 for the District of Columbia 
 (No. 99cv01776)

 Stephen M. Kohn argued the cause for appellant/cross-
appellee. With him on the briefs were Michael D. Kohn and 
David K. Colapinto.

 Paul Gonson argued the cause for appellees/cross-
appellants. With him on the briefs were Stephen G. Topetzes 
and Rebecca L. Kline. Teri L. Nelson entered an appear-
ance.

 Before: Williams, Ginsburg and Rogers, Circuit Judges.

 Opinion for the Court filed by Circuit Judge Williams.

 Williams, Circuit Judge: In Cole v. Burns International 
Security Services, 105 F.3d 1465 (D.C. Cir. 1997), we held 
that an employee who agrees to arbitration of disputes as a 
condition of employment and who makes a claim based on 
federal statutory rights may not be charged certain fees and 
expenses for arbitration of the claim, at least where that 
condition of employment was demanded by an employer not 
subject to regulatory oversight. See LaPrade v. Kidder, 
Peabody & Co., Inc., 246 F.3d 702, 704 (D.C. Cir. 2001). This 
case raises the issue whether Cole embraces or should be 
extended to non-statutory state law claims that are grounded 
in a "public policy rationale." We hold that the logic of Cole 
does not reach so far.

 * * *

 Appellant Ronald Brown was employed by the Washington, 
D.C. office of Wheat First Securities, a member of the 
National Association of Securities Dealers ("NASD"), from 
November 1991 until his termination with three days' notice 
in February 1997. When Brown signed on with Wheat First, 
he executed the NASD "Uniform Application for Securities 
Industry Registration or Transfer," commonly known as 
Form U-4, which includes a mandatory arbitration clause.

 In February 1998 Brown filed a claim under his arbitration 
agreement seeking $25,000,000 in damages for alleged wrong-
ful termination, breach of implied contract, defamation, slan-
der and tortious interference. In support of his wrongful 
termination claim, he argued that the District of Columbia 
courts have created a "whistleblower" exception to its 
employment-at-will rule, and that Wheat First had fired him 
for alerting the Securities and Exchange Commission to what 

he perceived to be illegal activities occurring at Wheat First. 
He paid a $500 non-refundable filing fee and a $1,500 hearing 
deposit. He also signed a Uniform Submission Agreement, 
agreeing to the arbitration of his claims under the NASD's 
rules. On February 11, 1999 during a pre-trial conference, 
the parties jointly requested a postponement of the final 
hearing, then scheduled for March 1999. The panel imposed 
an "adjournment fee" of $1,500 and assessed each party $750.

 The final hearing was later rescheduled for September 13, 
1999. But in April 1999 Brown filed an objection to the fee 
assessment, arguing that because he was pursuing "public 
law" claims, Cole prohibited any assignment of arbitration 
fees to him. The NASD rejected this theory. On June 29 
and 30, 1999, respectively, Brown filed a second objection 
with the NASD and filed his claims in district court, for the 
first time alleging a violation of the Civil Rights Act of 1871 in 
addition to the claims previously brought to arbitration.

 On September 7 the NASD denied Brown's second motion. 
"Not willing to participate" in the arbitral proceedings, 
Brown sought on September 10 to cancel the agreement to 
arbitrate contained in Form U-4 and on September 12 to 
have the arbitrators dismiss the claim without prejudice. On 
September 13 his attorney appeared before the arbitration 
panel to preserve objections, but didn't otherwise participate. 
On November 9, 1999 the arbitration panel dismissed his 
claims with prejudice and assessed him a fee of $6,365, which 
included costs that under Cole are considered arbitrators' 
fees. See Cole, 105 F.3d at 1484 n.15 (defining such fees).

 Brown then filed a motion in the district court proceeding 
to vacate the arbitration award; Wheat First responded with 
a motion to confirm the award. The district court granted 
the motion to confirm and denied Brown's motion to vacate, 
concluding that Cole applies only to statutory claims. Brown 
v. Wheat First Securities, Inc., 101 F. Supp. 2d 1, 2-5 (D.D.C. 
2000). On the basis of a Wheat First motion filed prior to the 
arbitrators' dismissal of Brown's claims, the district court also 
ordered arbitration of the newly-raised Civil Rights Act 
claims, but required that they be arbitrated on terms consis-

tent with Cole. Brown, 101 F. Supp. 2d at 7. Brown appeals 
the district court's confirmation of the arbitrators' dismissal 
and the denial of his motion to vacate. Id. at 5-7. Wheat 
First cross appeals the compelled arbitration, arguing that 
once the arbitration award was confirmed, the Civil Rights 
Act claims were precluded.

 * * *

 Brown's principal claim of error rests on the assertion that 
Cole applies to his truncated arbitration with Wheat First, 
either by its own terms or because its logic must extend to 
state common law claims that are rooted in "public policy." 
We assume in Brown's favor that the Supreme Court's recent 
decision in Green Tree Financial Corp. v. Randolph, 121 
S. Ct. 513 (2000), finding that a party claiming that arbitra-
tion would be "prohibitively expensive" must at least show 
"the likelihood of incurring such costs," id. at 522, leaves Cole 
fully intact. We also assume in his favor that his whistle-
blower claim would qualify as an exception to the 
employment-at-will doctrine under the principles of District of 
Columbia Law elucidated in Carl v. Children's Hospital, 702 
A.2d 159 (D.C. 1997). Nonetheless, both Brown's arguments 
fail.

 Cole involved claims of discrimination under Title VII of 
the Civil Rights Act of 1964. Acknowledging that the Su-
preme Court in Gilmer v. Interstate/Johnson Lane Corp., 500 
U.S. 20 (1991), had "made clear that, as a general rule, 
statutory claims are fully subject to binding arbitration," Cole, 
105 F.3d at 1478 (quoting Gilmer, 500 U.S. at 26), we also 
noted that "Gilmer cannot be read as holding that an arbitra-
tion agreement is enforceable no matter what rights it waives 
or what burdens it imposes," id. at 1482. The arbitration 
agreement will be valid "so long as the prospective litigant 
effectively may vindicate [his or her] statutory cause of action 
in the arbitral forum." Id. at 1481 (quoting Gilmer, 500 U.S. 
at 28 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-
Plymouth, Inc., 473 U.S. 614, 637 (1985))) (alteration in 
original). As to fees, we found that "it would undermine 
Congress's intent to prevent employees who are seeking to 

vindicate statutory rights from gaining access to a judicial 
forum and then require them to pay for the services of an 
arbitrator when they would never be required to pay for a 
judge in court." Cole, 105 F.3d at 1484. Accordingly we 
interpreted the arbitration agreement as requiring the em-
ployer to pay the arbitrator's fees. See id. at 1485.

 In arguing that Cole's holding extends to his non-statutory 
claims, Brown relies exclusively on the fact that Cole on 
occasion appears to use the phrases "public law" and "public 
rights" interchangeably with "statutory law" and "statutory 
rights." He contends that "public" carries a broader meaning 
than "statutory" and that this broader meaning should be 
given to the holding of the case. We think that Brown reads 
too much into this potentially expansive language.

 None of these terms has a sharply defined meaning. At 
oral argument, for example, Brown offered a definition of 
"public right" that he attributed (without specific citation) to 
Black's Law Dictionary: "Enforcement of rights in cases 
where the state is regarded as the subject of the right or the 
object of the duty." The 7th edition offers a narrower 
concept: "A right belonging to all citizens and usu. vested in 
and exercised by a public office or political entity." Black's 
Law Dictionary 1324 (7th ed. 1999). For public law, Black's 
says: "The body of law dealing with the relations between 
private individuals and the government, and with the struc-
ture and operation of the government itself; constitutional 
law, criminal law, and administrative law taken together." 
Id. at 1244 (7th ed. 1999). While totally different, both of 
these published definitions have in common the feature that 
they seem not to include the District of Columbia's whistle-
blowing doctrine.

 Even more to the point, our opinion in Cole is limited at 
vital points to statutory rights. For instance, when discuss-
ing the protections that Gilmer suggests are necessary, the 
opinion refers only to the non-waivability of the substantive 
protections of statutory rights and of access to a neutral 
forum in which to enforce them. See Cole, 105 F.3d at 1482. 
It nowhere mentions the waivability of or access to a forum to 

enforce non-statutory "public law." The court framed the 
issue as:

 [C]an an employer condition employment on acceptance 
 of an arbitration agreement that requires the employee 
 to submit his or her statutory claims to arbitration and 
 then requires that employee to pay all or part of the 
 arbitrator's fees?
 
Id. at 1483 (emphasis added).

 Further, in Gilmer the Supreme Court determined that 
compulsory arbitration pursuant to an employment agree-
ment is not inconsistent with the Age Discrimination in 
Employment Act, the federal statute in question there. Gil-
mer, 500 U.S. at 26-33. In Cole we defined our task as 
resolving an "issue not raised by the agreement in Gilmer," 
105 F.3d at 1483, namely the fees issue. It would be quite a 
contortion of Cole to find that it had addressed a far broader 
subject than the case that it set out simply to refine. See 
also LaPrade, 246 F.3d at 708 (assuming that arbitration 
assessment of fees for arbitration of non-statutory claims 
would not be subject to Cole).

 We also see no basis for extending Cole. As we have 
explained, our central rationale--respecting congressional in-
tent--does not extend beyond the statutory context. More-
over, by enacting the Federal Arbitration Act, Congress 
"manifest[ed] a 'liberal federal policy favoring arbitration 
agreements.' " Gilmer, 500 U.S. at 25 (quoting Moses H. 
Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 
1, 24 (1983)). The Act also pre-empted state restrictions on 
the enforcement of arbitration agreements. See Allied-Bruce 
Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 272 (1995); 
Southland Corp. v. Keating, 465 U.S. 1, 10-16 (1984). Gil-
mer, as we've seen, framed the question as whether dispute 
resolution under the FAA was consistent with the federal 
right-creating statute in question. See also, e.g., Green Tree, 
121 S. Ct. at 521 ("[W]e first ask whether the parties agreed 
to submit their claims to arbitration, and then ask whether 
Congress has evinced an intention to preclude a waiver of 
judicial remedies for the statutory rights at issue.") (internal 

citations omitted). For a common law claim under District of 
Columbia law, any such inconsistency would be resolved in 
favor of the only federal law involved, the FAA.

 Brown repeatedly urges that the D.C. Court of Appeals 
explicitly grounded its whistleblower exception in a "public 
policy" rationale. If this criterion controls, it is hard to see 
what falls outside it. All claims not based on contract--
including, for example, the defamation and tortious interfer-
ence claims that Brown asserted but does not link to his fees 
theory--implement values that society has in one way or 
another thought deserving. Even contract, although the 
branch of law most dependent on and deferential to individual 
choice, rests ultimately on social decisions to support fulfill-
ment of promises either as a good in itself or as an instru-
mental good, facilitating people's investment in projects that 
depend on others' adherence to their promises. Further, 
even if the exception identified by the D.C. court were 
somehow special, it is inconsequential as a measure of Con-
gress's interest in the stated policy. While Congress has 
enacted specific whistleblower protections, Brown never here 
asserts that he falls within any of them.

 Brown also nowhere asserts that D.C. law creates a Cole-
like requirement for its own common law "public policy" 
causes of action. Perhaps this omission is because state 
restrictions on arbitration are pre-empted by the Federal 
Arbitration Act. See Allied-Bruce, 513 U.S. at 272. Conceiv-
ably the rule Brown proposes could arise as part of the 
District of Columbia's law and yet escape pre-emption by 
being classified as a limitation on the arbitration procedures, 
rather than on the enforcement of agreements. See South-
land, 465 U.S. at 11 n.6. Because neither party raised this 
issue, we need not address it.

 Finally Brown asserts that because Congress in 1901 
granted power to the D.C. courts to enforce the common law, 
see Act of March 3, 1901, 31 Stat. 1189 (1899-1901), in the 
District of Columbia "common law and statutory claims are 
on the same footing." Obviously the District of Columbia's 
possession of congressionally granted authority to create 

common law does not turn all its doctrines into the equivalent 
of federal statutes, anymore than the Constitution's preserva-
tion of state lawmaking authority turns all state laws into 
federal constitutional law.

 In short, the proposed extension of Cole would significantly 
alter the terms of the Federal Arbitration Act, imposing a 
serious procedural limit on a wide (but unpredictable) range 
of arbitration claims, all without the slightest signal from 
Congress.

 * * *

 Brown makes two secondary arguments that need not 
detain us long. He argues, first, that even if he loses on the 
Cole claim the arbitration ruling should be vacated because 
the arbitrators lost jurisdiction when--in the middle of the 
arbitration that he had initiated--he went to court with a 
challenge to the arbitrability of his claims based on Cole. 
This loses on a superfluity of grounds, the simplest of which 
is that Brown's was a losing Cole claim.

 Brown also asserts that the failure of one of the arbitrators 
to timely disclose a tangential relationship to one of the 
lawyers for Wheat First requires vacatur of the arbitration 
award. The NASD rules require arbitrators to disclose past 
or present relationships with any of the parties, counsel, or 
witnesses. See NASD Code of Arbitration Procedure Rule 
10312. A party then has ten days after the announcement of 
the arbitrators to make a peremptory strike against one of 
the arbitrators. See id. Rule 10311. Several months after 
the initial disclosures but still months before the hearing, one 
of the arbitrators disclosed that she was the account executive 
of a discretionary brokerage account for a partner of the law 
firm representing Wheat First in this matter, and that more 
than 10 years earlier her firm had acted as investment banker 
for corporate issuers using that firm (or a predecessor law 
firm) as securities counsel.

 Brown claims that this late disclosure deprived him of his 
right to exercise his peremptory strike. But the cases cited 
in support of this proposition all involved revelations made 

after the award had been made, and are therefore inapplica-
ble here. See, e.g., Commonwealth Coatings Corp. v. Conti-
nental Casualty Co., 393 U.S. 145 (1968). Brown fails to 
show that he requested an extension of the time available to 
use his peremptory strike. Nor does he show that he used 
his peremptory against another arbitrator, which would at 
least explain a belief (which he nowhere asserts) that he had 
no peremptory left. His only written communication on the 
matter (Brown claims verbal objections that are in the record 
only to the extent his letter and the NASD response make 
reference to them) requested only removal for cause. The 
NASD rejected this request, and Brown fails to even allege 
here that the connections disclosed would justify removal for 
cause.

 * * *

 Wheat First argues on cross appeal that Brown's Civil 
Rights Act claim--which first appeared in a district court 
complaint filed after commencement of the arbitration--is 
barred by claim preclusion. Thus, it argues, the district court 
should not have ordered arbitration on the claim, but rather 
should have dismissed it. We agree.

 Brown's civil rights claim, alleging a conspiracy to prevent 
him from reporting criminal wrongdoing, arises out of essen-
tially the same set of events that were the subject of his 
original arbitral claims. It is clear that final adjudication of 
those claims would bar the civil rights claim, see, e.g., Schatt-
ner v. Girard, Inc., 668 F.2d 1366, 1368-69 (D.C. Cir. 1981), 
so long as Wheat First hasn't forfeited its claim preclusion 
objection.

 The record plainly shows that it did not. Wheat First has 
not yet filed its answer to Brown's district court complaint. 
"[I]f a party that fails to assert res judicata in a [pre-answer] 
motion is sleeping on its rights, it is an inconsequential 
catnap." Stanton v. District of Columbia Court of Appeals, 
127 F.3d 72, 77 (D.C. Cir. 1997). Thus there was no forfei-
ture.

 We will assume in Brown's favor that the issue was raised 
for the first time on appeal. In Stanton, we allowed a party 
to raise res judicata for the first time on appeal where there 
was no forfeiture and the claim could be successfully raised 
below on remand. See id. at 77 ("We can conceive of no 
reason for such judicial volleyball."). Concern for the effi-
cient use of adjudicative resources seems even more compel-
ling here, where in theory the defense would be shipped off to 
arbitration, presumably to return to district court on similar 
cross motions.

 Brown asserts that he will be prejudiced if we find the 
claim preclusion defense properly before us because it will 
mean the dismissal of his last remaining claim. But the only 
prejudice that Brown will suffer is the prejudice that comes 
from having a losing argument.

 The order confirming the arbitration award is affirmed and 
the order compelling arbitration of the statutory claim is 
vacated and remanded with instructions to dismiss the com-
plaint.

 So ordered.