[No. S101435. Feb. 27, 2003.]

ALEXANDER M. LITTLE, Plaintiff and Respondent, v.
AUTO STIEGLER, INC., Defendant and Appellant.

## COUNSEL

Fisher & Phillips, Christopher C. Hoffman and Jeffrey R. Thurrell for Defendant and Appellant.

Fine, Boggs, Cope & Perkins, Ned A. Fine, John P. Boggs and Michael K. Perkins for California Motorcar Dealers Association as Amicus Curiae on behalf of Defendant and Appellant.

Winston & Strawn and Lee T. Paterson for The Employers Group as Amicus Curiae on behalf of Defendant and Appellant.

Maxie Rheinheimer, Stephens & Vrevich and Darin L. Wessel as Amici Curiae on behalf of Defendant and Appellant.

Moskowitz, Brestoff, Winston & Blinderman, Nelson E. Brestoff and Dennis A. Winston for Plaintiff and Respondent.

McGuinn, Hillsman & Palefsky, Cliff M. Palefsky, Keith Ehrman; Pine & Pine and Norman Pine for California Employment Lawyers Association as Amicus Curiae on behalf of Plaintiff and Respondent.

## OPINION

**MORENO, J.**—In this case, we consider four interlocking questions: (1) Is a provision in a mandatory employment arbitration agreement that permits either party to "appeal" an arbitration award of more than $50,000 to a second arbitrator, unconscionable; (2) if it is unconscionable, then should that unconscionable provision be severed from the rest of the arbitration agreement and the agreement enforced, or is the entire agreement invalid; (3) if the former, then in reviewing the rest of the arbitration agreement, do the minimum requirements for arbitration of unwaivable statutory claims that we

set forth in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*) apply also to claims that an employee was terminated in violation of public policy; (4) if yes, then must one of those requirements—that the employer imposing mandatory arbitration on the employee must pay all costs unique to arbitration—be reconsidered and revised in light of a post-*Armendariz* United States Supreme Court decision on arbitration cost sharing, *Green Tree Financial Corp.-Ala. v. Randolph* (2000) 531 U.S. 79 [121 S.Ct. 513, 148 L.Ed.2d 373] (*Green Tree*)?

We conclude as follows: (1) the appellate arbitration provision for arbitration awards over $50,000 is unconscionable; (2) that provision should be severed and the rest of the arbitration agreement enforced; (3) a suit claiming wrongful termination in violation of public policy should be subject to the requirements set forth in *Armendariz*; and (4) *Green Tree* does not require that we modify *Armendariz*'s cost requirements. We accordingly partly reverse the Court of Appeal's judgment.

## I. STATEMENT OF FACTS

Alexander M. Little worked for Auto Stiegler, Inc., an automobile dealership. Little eventually rose to become Auto Stiegler's service manager. He alleges that he was demoted, then terminated, for investigating and reporting warranty fraud. He filed an action against defendant for tortious demotion in violation of public policy; tortious termination in violation of public policy; breach of an implied contract of continued employment; and breach of the implied covenant of good faith and fair dealing. In the first through third causes of action, he sought compensatory and punitive damages. In the fourth cause of action, plaintiff sought only contract breach damages. He sought no relief under the California Fair Employment and Housing Act (FEHA). (Gov. Code, § 12900 et seq.)

Little signed three nearly identical arbitration agreements while employed by defendant in June 1995, October 1996, and January 1997. The most recent of the three stated as follows: "I agree that any claim, dispute, or controversy (including, but not limited to, any and all claims of discrimination and harassment) which would otherwise require or allow resort to any court or other governmental dispute resolution forum between myself and the Company (or its owners, directors, and officers, and parties affiliated with its employee benefit and health plans) arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with, the Company, whether based on tort, contract, statutory, or equitable law, or otherwise, shall be

submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act, in conformity with the procedures of the California Arbitration Act (Cal. Code Civ. Proc. Sec 1280 et seq., including section 1283.05 and all of the act's other mandatory and permissive rights to discovery); provided, however, that: In addition to requirements imposed by law, any arbitrator herein shall be a retired California Superior Court Judge and shall be subject to disqualification on the same grounds as would apply to a judge of such court. To the extent applicable in civil actions in California courts, the following shall apply and be observed: all rules of pleading (including the right of demurrer), all rules of evidence, all rights to resolution of the dispute by means of motions for summary judgment, judgment on the pleadings, and judgment under Code of Civil Procedure section 631.8. Resolution of the dispute shall be based solely upon the law governing the claims and defenses pleaded, and the arbitrator may not invoke any basis other than such controlling law, including but not limited to, notions of 'just cause.' As reasonably required to allow full use and benefit of this agreement's modifications to the act's procedures, the arbitration shall extend the times set by the act for the giving of notices and setting of hearings. Awards exceeding $50,000.00 shall include the arbitrator's written reasoned opinion and, at either party's written request within 20 days after issuance of the award, shall be subject to reversal and remand, modification, or reduction following review of the record and arguments of the parties by a second arbitrator who shall, as far as practicable, proceed according to the law and procedures applicable to appellate review by the California Court of Appeal of a civil judgment following court trial. I understand by agreeing to this binding arbitration provision, both I and the Company give up our rights to trial by jury."

Auto Stiegler's initial motion to compel arbitration was granted. Following our decision in *Armendariz*, the trial court, upon plaintiff's request for reconsideration, denied defendant's motion to compel arbitration. The trial court ruled: "The court believes that the arbitration clause in issue does not meet the standards set forth by the Supreme Court and it should not be enforced. The clauses of the arbitration agreement that do not comport with the requirements of the Armendariz [decision] include the clauses that: [¶] 1. Require the Plaintiff to share the costs; [¶] 2. Provide for no judicial review. The court deems this fatal, as judicial review of all decisions is not the same as limited review by another arbitrator of only certain awards; [¶] 3. Limit the remedies available to the complainant [*sic*] [to] possibly exclude equitable as opposed to legal remedies, to which he might otherwise be entitled. [¶] 4. Lack of mutuality of remedy, in that this clause, unlike the one in *Armendariz* does not obviously bind the employer to likewise enforce its right in the arbitration forum."

The Court of Appeal reversed. It held that the *Armendariz* requirements did not apply to nonstatutory claims. Further, it rejected the claim that the arbitration agreement was unconscionable. It focused on *Armendariz*'s discussion of whether both parties were bound to arbitrate, and concluded that the arbitration agreements did in fact bind both parties. The Court of Appeal did not consider whether the arbitration "appeal" triggered by an award of greater than $50,000 was unconscionable. Finally, the court concluded that under the United States Supreme Court's decision in *Green Tree*, silence as to who would bear the costs of arbitration was not a basis for invalidating the agreement. We granted review.

## II.  DISCUSSION

### A.  *Unconscionability of Appellate Arbitration Provision*

As recounted, the arbitration agreement provided that "[a]wards exceeding $50,000.00 shall include the arbitrator's written reasoned opinion and, at either party's written request within 20 days after issuance of the award, shall be subject to reversal and remand, modification, or reduction following review of the record and arguments of the parties by a second arbitrator who shall, as far as practicable, proceed according to the law and procedures applicable to appellate review by the California Court of Appeal of a civil judgment following court trial." Little contends this provision is unconscionable. We agree.

To briefly recapitulate the principles of unconscionability, the doctrine has " 'both a "procedural" and a "substantive" element,' the former focusing on ' "oppression" ' or ' "surprise" ' due to unequal bargaining power, the latter on ' "overly harsh" ' or ' "one-sided" ' results." (*Armendariz, supra*, 24 Cal.4th at p. 114.) The procedural element of an unconscionable contract generally takes the form of a contract of adhesion, " 'which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' " (*Id.* at p. 113.) "[I]n the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." (*Id.* at p. 115.)  It is clear in the present case that Auto Stiegler imposed on Little an adhesive arbitration agreement.

Substantively unconscionable terms may take various forms, but may generally be described as unfairly one-sided. One such form, as in

*Armendariz*, is the arbitration agreement's lack of a " 'modicum of bilaterality,' " wherein the employee's claims against the employer, but not the employer's claims against the employee, are subject to arbitration. (*Armendariz, supra*, 24 Cal.4th at p. 119.) Another kind of substantively unconscionable provision occurs when the party imposing arbitration mandates a post-arbitration proceeding, either judicial or arbitral, wholly or largely to its benefit at the expense of the party on which the arbitration is imposed. Two Court of Appeal cases have addressed this kind of unconscionability.

In *Beynon v. Garden Grove Medical Group* (1980) 100 Cal.App.3d 698 [161 Cal.Rptr. 146] (*Beynon*), the medical group imposed on its patients a mandatory arbitration agreement. Paragraph B of the agreement authorized the medical group, but not the patient, to reject the first arbitration award and submit the dispute to a second arbitration panel. The court held the provision unconscionable. "That the provisions of paragraph B unreasonably limit the obligations of the health plan and health care provider and defeat the reasonable expectations of one enrolling in the plan is manifest. The term arbitration normally imports a dispute resolution procedure which is speedy, economical and 'bears equally' on the parties. [Citation.] The provisions of paragraph B, however, are weighted in favor of the health plan and provider of services and against members and can render arbitration an expensive and protracted proceeding. By granting to only the health plan or health care provider the unilateral right to reject an arbitration award without cause and to require rearbitration, paragraph B enables the health plan and health care provider to transform arbitration into virtually a 'heads I win, tails you lose' proposition." (*Beynon, supra*, 100 Cal.App.3d at p. 706.)

*Saika v. Gold* (1996) 49 Cal.App.4th 1074 [56 Cal.Rptr.2d 922] (*Saika*), also arose in the doctor/patient setting. The arbitration agreement in that case had a provision that permitted either party to reject an arbitration award of $25,000 or greater and request a trial de novo in superior court. The Court of Appeal refused to enforce the provision and instead directed the trial court to confirm the $325,000 award in the patient's favor. The court rejected the doctor's argument that the case was distinguishable from *Beynon* because the challenged arbitration provision permitted *either* party to request a trial de novo if the award exceeded the stated amount. "[I]n the vernacular of late 20th century America, let us 'get real.' As a practical matter, the benefit which the trial de novo clause confers on patients is nothing more than a chimera. The odds that an award will *both* (a) clear the $25,000 threshold but (b) *still* be so low that the *patient* would *want* to have a trial de novo are so small as to be negligible. Unless we are to assume that arbitrators in medical malpractice cases regularly and capriciously make awards substantially below what justice requires—and that is an assumption which we will not

indulge—the cases where the trial de novo clause could possibly benefit the patient are going to be rare indeed." (*Saika, supra,* 49 Cal.App.4th at p. 1080.) The court concluded that "the rejection clause meant the arbitration agreement really did not function as an *arbitration* agreement. The promise of an inexpensive, speedy resolution to the claim evaporated with one party's unilateral ability to avoid results it did not like. [¶] We have already referred to the strong public policy favoring arbitration. That policy is manifestly undermined by provisions in arbitration clauses which seek to make the arbitration process itself an offensive weapon in one party's arsenal." (*Id.* at p. 1081.)

Auto Stiegler and its amici curiae make several arguments to distinguish this case from *Beynon* and *Saika.* First, they claim that the arbitration appeal provision applied evenhandedly to both parties and that, unlike the doctor/patient relationship in *Saika,* there is at least the possibility that an employer may be the plaintiff, for example in cases of misappropriation of trade secrets. (See, e.g., *Brennan v. Tremco Inc.* (2001) 25 Cal.4th 310 [105 Cal.Rptr.2d 790, 20 P.3d 1086].) But if that is the case, they fail to explain adequately the reasons for the $50,000 award threshold. From a plaintiff's perspective, the decision to resort to arbitral appeal would be made not according to the amount of the arbitration award but the potential value of the arbitration claim compared to the costs of the appeal. If the plaintiff and his or her attorney estimate that the potential value of the claim is substantial, and the arbitrator rules that the plaintiff takes nothing because of its erroneous understanding of a point of law, then it is rational for the plaintiff to appeal. Thus, the $50,000 threshold inordinately benefits defendants. Given the fact that Auto Stiegler was the party imposing the arbitration agreement and the $50,000 threshold, it is reasonable to conclude it imposed the threshold with the knowledge or belief that it would generally be the defendant.

Although parties may justify an asymmetrical arbitration agreement when there is a "legitimate commercial need" (*Armendariz, supra,* 24 Cal.4th at p. 117), that need must be "other than the employer's desire to maximize its advantage" in the arbitration process. (*Id.* at p. 120.) There is no such justification for the $50,000 threshold. The explanation for the threshold offered by amicus curiae Maxie, Rheinheimer, Stephens & Vrevich—that an award in which there is less than that amount in controversy would not be worth going through the extra step of appellate arbitral review—makes sense only from a defendant's standpoint and cannot withstand scrutiny.

Auto Stiegler also argues that an arbitration appeal is less objectionable than a second arbitration, as in *Beynon,* or a trial de novo, as in *Saika,*

because it is not permitting a wholly new proceeding, making the first arbitration illusory, but only permitting limited appellate review of the arbitral award. We fail to perceive a significant difference. Each of these provisions is geared toward giving the arbitral defendant a substantial opportunity to overturn a sizable arbitration award. Indeed, in some respects appellate review is more favorable to the employer attempting to protect its interests. It is unlikely that an arbitrator who merely acts in an appellate capacity will increase an award against the employer, whereas a trial or arbitration de novo at least runs the risk that the employer would become liable for an even larger sum than that awarded in the initial arbitration.

We therefore conclude that the arbitral appeal provision in this particular agreement is unconscionably one-sided and may not be enforced. We next turn to the question whether this provision may be severed and the rest of the arbitration agreement enforced, or whether the entire agreement should be invalidated.

### B. Is the Unconscionable Portion of the Agreement Severable?

In *Armendariz*, we reviewed the principles regarding the severance of illegal terms from an arbitration agreement. As we stated: "Two reasons for severing or restricting illegal terms rather than voiding the entire contract appear implicit in case law. The first is to prevent parties from gaining undeserved benefit or suffering undeserved detriment as a result of voiding the entire agreement—particularly when there has been full or partial performance of the contract. [Citations.] Second, more generally, the doctrine of severance attempts to conserve a contractual relationship if to do so would not be condoning an illegal scheme. [Citations.] The overarching inquiry is whether ' "the interests of justice . . . would be furthered" ' by severance. [Citation.] Moreover, courts must have the *capacity* to cure the unlawful contract through severance or restriction of the offending clause, which . . . is not invariably the case." (*Armendariz, supra*, 24 Cal.4th at pp. 123-124.) Accordingly, "[c]ourts are to look to the various purposes of the contract. If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." (*Id.* at p. 124.)

In *Armendariz*, we found two factors weighed against severance of the unlawful provisions. "First, the arbitration agreement contains more than one unlawful provision; it has both an unlawful damages provision and an unconscionably unilateral arbitration clause. Such multiple defects indicate a

systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage. . . . [¶] Second, in the case of the agreement's lack of mutuality, . . . permeation [by an unlawful purpose] is indicated by the fact that there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement. Rather, the court would have to, in effect, reform the contract, not through severance or restriction, but by augmenting it with additional terms. Civil Code section 1670.5 does not authorize such reformation by augmentation, nor does the arbitration statute. Code of Civil Procedure section 1281.2 authorizes the court to refuse arbitration if grounds for revocation exist, not to reform the agreement to make it lawful. Nor do courts have any such power under their inherent limited authority to reform contracts. [Citations.]" (*Armendariz, supra*, 24 Cal.4th at pp. 124-125.)

Neither of these factors is operative in the present case. There is only a single provision that is unconscionable, the one-sided arbitration appeal.[1] And no contract reformation is required—the offending provision can be severed and the rest of the arbitration agreement left intact. Thus, the courts in *Beynon* and *Saika*, considering similar provisions, severed them and enforced the rest of the arbitration agreement. (*Beynon, supra*, 100 Cal.App.3d at p. 713; *Saika, supra*, 49 Cal.App.4th at p. 1082.)

Moreover, there is no indication that the state of the law was "sufficiently clear at the time the arbitration agreement was signed to lead to the conclusion that this [appellate arbitration provision] was drafted in bad faith."

---

[1]We note that the other three grounds the trial court found in this case for refusing to enforce the arbitration agreement, described in the statement of facts above, do not appear to be valid. First, the fact that an arbitration agreement does not explicitly provide for judicial review is no basis for invalidating it. (*Armendariz, supra*, 24 Cal.4th at p. 107.) Second, unlike in *Armendariz*, nothing in the language of the present agreement limits remedies and no limitation should be implied. Finally, unlike the agreement in *Armendariz*, which explicitly limited the scope of the arbitration agreement to wrongful termination claims and therefore implicitly excluded the employer's claims against the employee (*id.* at pp. 92, 120), the arbitration agreement in the present case contained no such limitation, instead applying to "any claim, dispute, or controversy . . . between [the employee] and the Company."

Amicus curiae California Employment Lawyers Association points to other provisions in the agreement that are, in its view, contrary to public policy or unconscionable. Essentially, amicus curiae objects to the incorporation of legal formalities into Auto Stiegler's arbitration agreement: its mandate that the rules of pleading and evidence shall be observed, that the arbitrator shall only rely on governing law and not informal principles of "just cause," and that traditional judicial motions such as demurrer and summary judgment be available to the parties. They claim that such procedures detract from the inherent informality of arbitration. Without more, however, we cannot say that these provisions, which make arbitration more closely follow judicial procedures, are unconscionably one-sided. It is not at all obvious that such provisions would inordinately benefit Auto Stiegler rather than Little. To the extent that the availability of dispositive pre-arbitration motions favor Auto Stiegler as defendant, they confer no more of an advantage than would be the case had the action been brought in court.

(*Armendariz, supra,* 24 Cal.4th at pp. 124-125, fn. 13.) There is enough of a difference between the appellate arbitration provision, drafted in the employment context, and the de novo trial and arbitration provisions in the doctor/patient setting in *Beynon* and *Saika,* to preclude a determination that the provision was directly contrary to settled law and therefore inferentially drafted in bad faith.

We therefore conclude that Auto Stiegler's arbitration agreement is valid and enforceable once the unconscionable appellate arbitration provision is deleted. Whether a court should refuse to enforce it on other grounds will be considered below.

### C. Is Arbitration of a Tameny Claim Subject to the Minimal Procedural Requirements Set Forth in Armendariz?

In *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 178 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314] (*Tameny*), we recognized that although employers have the power to terminate employees at will, they may not terminate an employee for a reason that is contrary to public policy. Little claims that arbitration of *Tameny* claims are subject to the minimum requirements set forth in *Armendariz,* reviewed below. We agree.

In *Armendariz,* we held that arbitration of claims under the FEHA is subject to certain minimal requirements: (1) the arbitration agreement may not limit the damages normally available under the statute (*Armendariz, supra,* 24 Cal.4th at p. 103); (2) there must be discovery "sufficient to adequately arbitrate their statutory claim" (*id.* at p. 106); (3) there must be a written arbitration decision and judicial review " 'sufficient to ensure the arbitrators comply with the requirements of the statute' " (*ibid.*); and (4) the employer must "pay all types of costs that are unique to arbitration" (*id.* at p. 113).

These requirements were founded on the premise that certain statutory rights are unwaivable. "This unwaivability derives from two statutes that are themselves derived from public policy. First, Civil Code section 1668 states: 'All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.' 'Agreements whose object, directly or indirectly, is to exempt [their] parties from violation of the law are against public policy and may not be enforced.' [Citation.] Second, Civil Code section 3513 states, 'Anyone may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be

contravened by a private agreement.' [Citations.]" (*Armendariz, supra*, 24 Cal.4th at p. 100.) We concluded that the FEHA was enacted for public reasons and the rights it conferred on employees were unwaivable. (*Id.* at pp. 100-101.) We then concluded that the above requirements were necessary to enable an employee to vindicate these unwaivable rights in an arbitration forum.

A *Tameny* claim is almost by definition unwaivable. "[The] public policy exception to the at-will employment rule must be based on policies 'carefully tethered to fundamental policies that are delineated in constitutional or statutory provisions . . . .'" (*Silo v. CHW Medical Foundation* (2002) 27 Cal.4th 1097, 1104 [119 Cal.Rptr.2d 698, 45 P.3d 1162].) Moreover, the public policy that is the basis for such a claim must be " ' "public" in that it "affects society at large" rather than the individual, must have been articulated at the time of discharge, and must be " 'fundamental' " and " 'substantial.' " ' " (*Ibid.*) Thus, a legitimate *Tameny* claim is designed to protect a public interest and therefore " 'cannot be contravened by a private agreement.' " (*Armendariz, supra*, 24 Cal.4th at p. 100.) In other words, an employment agreement that required employees to waive claims that they were terminated in violation of public policy would itself be contrary to public policy. Accordingly, because an employer cannot ask the employee to waive *Tameny* claims, it also cannot impose on the arbitration of these claims such burdens or procedural shortcomings as to preclude their vindication. Thus, the *Armendariz* requirements are as appropriate to the arbitration of *Tameny* claims as to unwaivable statutory claims.

Auto Stiegler cites *Brown v. Wheat First Securities, Inc.* (D.C. Cir. 2001) 257 F.3d 821 (*Brown*), which came to a contrary conclusion with respect to a claim for termination in violation of public policy under District of Columbia law. The court held that *Cole v. Burns Intern. Security Services* (D.C. Cir. 1997) 105 F.3d 1465 (*Cole*), a case on which *Armendariz* relied, and which set forth requirements for arbitrating claims under title VII of the Civil Rights Act of 1964 similar to the *Armendariz* requirements, should be limited to federal statutory claims, not state tort claims derived from common law. In *Brown*, an employee of a securities firm was allegedly terminated for alerting the Securities and Exchange Commission to illegal activities occurring at his employer's firm. He claimed to fall within the "whistleblower" exception to the employment-at-will rule under District of Columbia common law. He refused to participate in subsequent arbitration and moved to vacate the arbitration award on the grounds that he was to be charged substantial arbitration fees, contrary to *Cole*.

The *Brown* court, which consisted of a different panel of the District of Columbia Circuit Court of Appeals than had decided *Cole*, began by reviewing the latter decision. As the *Brown* court summarized it, *Cole* acknowledged "that the Supreme Court in *Gilmer v. Interstate/Johnson Lane Corp.*,

500 U.S. 20, 111 S.Ct. 1647 [114 L.Ed.2d 26] (1991) [(*Gilmer*)], had 'made clear that, as a general rule, statutory claims are fully subject to binding arbitration,' [citations] [.] [But] we also noted that '*Gilmer* cannot be read as holding that an arbitration agreement is enforceable no matter what rights it waives or what burdens it imposes,' [citation]. The arbitration agreement will be valid 'so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum.' [Citations.] As to fees, we found that 'it would undermine Congress's intent to prevent employees who are seeking to vindicate statutory rights from gaining access to a judicial forum and then require them to pay for the services of an arbitrator when they would never be required to pay for a judge in court.' [Citation.] Accordingly we interpreted the arbitration agreement as requiring the employer to pay the arbitrator's fees." (*Brown, supra,* 257 F.3d at pp. 824-825.)

The *Brown* court, in rejecting the extension of *Cole* to nonstatutory claims, pointed to language in *Cole* limiting its holding to such claims. The court further stated: "We also see no basis for extending *Cole.* As we have explained, our central rationale—respecting congressional intent—does not extend beyond the statutory context. Moreover, by enacting the Federal Arbitration Act, Congress 'manifest[ed] a "liberal federal policy favoring arbitration agreements." ' [Citations]. The Act also pre-empted state restrictions on the enforcement of arbitration agreements. [Citations.] *Gilmer,* as we've seen, framed the question as whether dispute resolution under the FAA was consistent with the federal right-creating statute in question. [Citation.] For a common law claim under District of Columbia law, any such inconsistency would be resolved in favor of the only federal law involved, the FAA." (*Brown, supra,* 257 F.3d at pp. 825-826.)

We disagree with the *Brown* court, at least insofar as its decision would be interpreted to preclude extension of the *Armendariz* requirements to *Tameny* claims. First, although *Cole* was a title VII case properly focused on mandatory arbitration of federal statutory rights, its rationale extends beyond that context generally to unwaivable rights conferred for a public benefit. The statement in *Gilmer* that provides the point of departure in *Cole*—" '[b]y agreeing to arbitrate a statutory claim, [an employee] does not forgo the substantive rights afforded by the statute; [he] only submits to their resolution in an arbitral, rather than a judicial, forum' " (*Cole, supra,* 105 F.3d at p. 1481, quoting *Gilmer, supra,* 500 U.S. at p. 26 [111 S.Ct. at p. 1652])— would apply equally to nonstatutory public rights.

The *Brown* court's apparent position that only *federal* statutory rights may be subject to *Cole*'s requirements, because any attempt to place conditions on arbitration based on state law would be preempted by the Federal

Arbitration Act (FAA), is incorrect. The FAA provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) Thus, " '[a] state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with [the text of § 2] [of the FAA].' " (*Doctor's Associates, Inc. v. Casarotto* (1996) 517 U.S. 681, 685 [116 S.Ct. 1652, 1655, 134 L.Ed.2d 902], second brackets added.) But under section 2 of the FAA, a state court may refuse to enforce an arbitration agreement based on "generally applicable contract defenses, such as fraud, duress, or unconscionability." (*Doctor's Associates, Inc., supra*, 517 U.S. at p. 687 [116 S.Ct. at p. 1656].) One such long-standing ground for refusing to enforce a contractual term is that it would force a party to forgo unwaivable public rights, as reviewed above. (See, e.g., *Baker Pacific Corp v. Suttles* (1990) 220 Cal.App.3d 1148, 1153-1154 [269 Cal.Rptr. 709] [mandatory employee waiver of all employer liability for asbestos exposure contrary to public policy].)[2]

Thus, while we recognize that a party compelled to arbitrate such rights does not waive them, but merely " 'submits to their resolution in an arbitral, rather than a judicial, forum' " (*Gilmer, supra*, 500 U.S. at p. 26 [111 S.Ct. at p. 1652]), arbitration cannot be misused to accomplish a de facto waiver of these rights. Accordingly, although the *Armendariz* requirements specifically concern arbitration agreements, they do not do so out of a generalized mistrust of arbitration per se (see *Doctor's Associates, Inc. v. Casarotto, supra*, 517 U.S. at p. 687 [116 S.Ct. at p. 1656]), but from a recognition that *some* arbitration agreements and proceedings may harbor terms, conditions and practices that undermine the vindication of unwaivable rights. The *Armendariz* requirements are therefore applications of general state law contract principles regarding the unwaivability of public rights to the unique context of arbitration, and accordingly are not preempted by the FAA. And, as discussed above, there is no reason under *Armendariz*'s logic to distinguish between unwaivable statutory rights and unwaivable rights derived from common law.

---

[2]We note the prohibition against exculpatory contracts contrary to public policy is generally invoked in the context of contracts of adhesion. (See, e.g., *Baker Pacific Corp v. Suttles, supra*, 220 Cal.App.3d at p. 1151; *Tunkl v. Regents of University of California* (1963) 60 Cal.2d 92, 99-100 [32 Cal.Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693].) Thus, as with unwaivable statutory claims, special arbitration requirements for *Tameny* claims "would generally not apply in situations in which an employer and an employee knowingly and voluntarily enter into an arbitration agreement after a dispute has arisen. In those cases, employees are free to determine what trade-offs between arbitral efficiency and formal procedural protections best safeguard their . . . rights." (*Armendariz, supra*, 24 Cal.4th at p. 103, fn. 8.) Nor would our conclusion that waiver of the right is contrary to public policy preclude a party from settling a claim based on that right. (See, e.g., *Jefferson v. Department of Youth Authority* (2002) 28 Cal.4th 299 [121 Cal.Rptr.2d 391, 48 P.3d 423] [approving an agreement and release settling a FEHA claim].)

We recognize that "[i]n enacting § 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." (*Southland Corp. v. Keating* (1984) 465 U.S. 1, 10 [104 S.Ct. 852, 858, 79 L.Ed.2d 1] (*Southland*).) The object of the *Armendariz* requirements, however, is not to compel the substitution of adjudication for arbitration, but rather to ensure minimum standards of fairness in arbitration so that employees subject to mandatory arbitration agreements can vindicate their public rights in an arbitral forum.

Specifically, with regard to arbitration costs at issue in this case and in *Brown*, the principle that arbitration costs may prevent arbitration claimants from effectively pursuing their public rights would apply with equal force to *Tameny* claims as to FEHA claims or to federal statutory claims. Nothing in the FAA prevents states from controlling arbitration costs imposed by adhesive contracts so that the remedy of prosecuting state statutory or common law public rights through arbitration is not rendered illusory. The *Armendariz* cost-shifting requirement is unique to arbitration only to the extent that arbitration, alone among contract provisions, may potentially require litigants to expend large sums to pay for the costs of the hearing that will decide his or her statutory other public rights. In other words, it is not the arbitration agreement itself but the imposition of arbitration forum costs that under certain circumstances violates state law.

Moreover, *Armendariz*'s cost rule does not "require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." (*Southland, supra,* 465 U.S. at p. 10 [104 S.Ct. at p. 858]) Rather, we simply required that employers pay arbitration forum costs under certain circumstances as a condition of arbitration. Nothing in the United States Supreme Court case law leads us to believe that a state requirement shifting arbitration costs in mandatory employment agreements to the employer pursuant to established state law contract doctrine violates the FAA.

Furthermore, Code of Civil Procedure section 1284.2, which provides that each party pay a pro rata share of arbitration costs unless the agreement provides otherwise, does not alter our conclusion. We held in *Armendariz* that this statute does not preclude the judicial imposition of proportionally greater costs on the employer in the case of FEHA claims. (*Armendariz, supra,* 24 Cal.4th at p. 112.) We reasoned that "the agreement to arbitrate a statutory claim is implicitly an agreement to abide by the substantive remedial provisions of the statute" and that the FEHA implicitly prohibited large arbitration costs that would stand as an obstacle to successfully pursuing rights conferred on the employee. (*Ibid.*) We similarly conclude that an

agreement to arbitrate a claim of wrongful termination contrary to public policy must be interpreted to implicitly include an agreement to proportion costs in a manner that is reasonable for the employee/claimant, in order to prevent the de facto waiver of unwaivable rights contrary to Civil Code sections 1668 and 3513, discussed above. Code of Civil Procedure section 1284.2's default provision does not compel a contrary conclusion.

Therefore, we conclude that a plaintiff/employee seeking to arbitrate a *Tameny* claim should have the benefit of the same minimal protections as for FEHA claims as a means of ensuring that they can effectively prosecute such a claim in the arbitral forum.[3] These include the availability of damages remedies equal to those available in a *Tameny* suit brought in court, including punitive damages (*Commodore Home Systems, Inc. v. Superior Court* (1982) 32 Cal.3d 211, 220 [185 Cal.Rptr. 270, 649 P.2d 912]); discovery sufficient to adequately arbitrate *Tameny* claims; a written arbitration decision and judicial review sufficient to ensure that arbitrators have complied with the law respecting such claims; and allocation of arbitration costs so that they will not unduly burden the employee.

We have already rejected the contentions that the arbitration agreement in the present case limited Little's remedies or his ability to obtain adequate judicial review. Nor is it evident from the agreement that Little will be unable to obtain adequate discovery. Little argues, however, that there is a risk of burdensome costs being imposed on him, contrary to *Armendariz*. We consider this arguments in the next part of our opinion.[4]

### D.  *Cost Sharing and Arbitration of Tameny Claims*

█ Little argues that the arbitration agreement's silence on the issue of costs means that he would be statutorily compelled to share costs under

---

[3]Auto Stiegler also cites *Brennan v. Tremco Inc., supra,* 25 Cal.4th 310, in support of its position that *Tameny* claims are not subject to the *Armendariz* requirements. In *Brennan,* we held that no suit for malicious prosecution may be maintained for an action that the parties resolve through contractual arbitration. In discussing the reasons for this rule, the court stated: "[T]he nature of private arbitration does not always allow for a ready determination of whether or why the prior action actually terminated in the malicious prosecution plaintiff's favor. Except for statutory claims [citing *Armendariz*], an arbitrator need not explain the basis of an award." (*Brennan, supra,* at p. 317.) *Brennan* did not consider the extension of *Armendariz* to *Tameny* claims, and may not be relied upon by Auto Stiegler. (*People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 198 [96 Cal.Rptr.2d 463, 999 P.2d 686] [" 'cases are not authority for propositions not considered' "].) Nor does our extension of *Armendariz* to *Tameny* claims undermine *Brennan*'s point that in most arbitrations, the arbitrator need not explain the basis for the award.

[4]Auto Stiegler argues that even if *Armendariz* is extended to *Tameny* claims, Little's complaint does not state facts sufficient to allege a *Tameny* cause of action. Neither the trial court nor the Court of Appeal addressed this issue, and we express no view on the matter. On remand, Auto Stiegler will have an opportunity to reassert this argument.

Code of Civil Procedure section 1284.2, and that the imposition of such costs renders the arbitration agreement unenforceable. *Armendariz* did not conclude that an arbitration agreement silent on costs was unenforceable. On the contrary, we held we would infer from such silence an agreement that "the employer must bear the arbitration forum costs" and that "[t]he absence of specific provisions on arbitration costs would . . . not be grounds for denying the enforcement of an arbitration agreement." (*Armendariz, supra*, 24 Cal.4th at p. 113.)

The California Motorcar Dealers Association, amicus curiae on behalf of Auto Stiegler, argues that our holding on costs in *Armendariz* has been supplanted by the United States Supreme Court's holding in *Green Tree*, *supra*, 531 U.S. 79. Because the allocation of arbitration costs will be at issue on remand, we address the relationship between *Armendariz* and *Green Tree*.

In *Green Tree*, the plaintiff, purchaser of a mobilehome, sued her lender on various federal statutory grounds, including violation of the Truth in Lending Act (TILA) (15 U.S.C. § 1601 et seq.) for failing to disclose certain finance charges. (*Green Tree, supra*, 531 U.S. at pp. 82-83 [121 S.Ct. at pp. 517-518].) The buyer's agreement with the lender contained a binding arbitration clause that included all statutory claims. The agreement was silent on the issue of who would pay the costs of arbitration. The district court granted the lender's motion to compel arbitration but the court of appeals reversed, holding that the agreement posed the risk that the plaintiff's "ability to vindicate her statutory rights would be undone by 'steep' arbitration costs, and therefore was unenforceable." (*Id.* at p. 84 [121 S.Ct. at p. 518].)

The United States Supreme Court reversed. It first reaffirmed its long-standing position that statutory claims are arbitrable under the FAA absent the expression of congressional intent "to preclude a waiver of judicial remedies for the statutory rights at issue." (*Green Tree, supra*, 531 U.S. at p. 90 [121 S.Ct. at p. 521].) Finding no such expression in the TILA, the court proceeded to address the borrower's argument that silence on the matter of arbitration costs created an unacceptable risk that she might have to pay prohibitive costs and therefore not be able to vindicate her statutory rights through arbitration. The court stated: "It may well be that the existence of large arbitration costs could preclude a litigant such as Randolph from effectively vindicating her federal statutory rights in the arbitral forum. But the record does not show that Randolph will bear such costs if she goes to arbitration. Indeed, it contains hardly any information on the matter. As the Court of Appeals recognized, 'we lack . . . information about how claimants fare under Green Tree's arbitration clause.' [Citation.] The record

reveals only the arbitration agreement's silence on the subject, and that fact alone is plainly insufficient to render it unenforceable. The 'risk' that Randolph will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." (*Id.* at pp. 90-91 [121 S.Ct. at p. 522], fn. omitted.)

The court further explained: "To invalidate the agreement on that basis would undermine the 'liberal federal policy favoring arbitration agreements.' [Citation.] It would also conflict with our prior holdings that the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration. [Citations.] We have held that the party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue. [Citations.] Similarly, we believe that where, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be *prohibitively expensive*, that party bears the burden of showing the likelihood of incurring such costs. Randolph did not meet that burden. How detailed the showing of prohibitive expense must be before the party seeking arbitration must come forward with contrary evidence is a matter we need not discuss; for in this case neither during discovery nor when the case was presented on the merits was there any timely showing at all on the point. The Court of Appeals therefore erred in deciding that the arbitration agreement's silence with respect to costs and fees rendered it unenforceable." (*Green Tree, supra,* 531 U.S. at pp. 91-92 [121 S.Ct. at pp. 522-523], italics added, fn. omitted.)

Although *Green Tree* was not an employment case, most courts interpreting it have done so in the employment context. These courts have arrived at divergent meanings of the "prohibitively expensive" standard. Some courts have interpreted that term narrowly and maintain that it does not affect the validity of the categorical position set forth in *Cole, supra,* 105 F.3d 1465, that the employer should pay the costs of a mandatory employment arbitration of statutory claims. (See, e.g., *Circuit City Stores, Inc. v. Adams* (9th Cir. 2002) 279 F.3d 889; *Cooper v. MRM Inv. Co.* (M.D.Tenn. 2002) 199 F.Supp.2d 771, 781; *Ball v. SFX Broadcasting, Inc.* (N.D.N.Y. 2001) 165 F.Supp.2d 230.) Other courts have held that *Green Tree* represents a departure from *Cole*'s categorical position, and requires a case-by-case analysis based on such factors as the employee's ability to pay the arbitration fees and the differential between projected arbitration and litigation fees. (See, e.g., *Blair v. Scott Specialty Gases* (3d Cir. 2002) 283 F.3d 595, 609 (*Blair*); *Nelson v. Insignia/ESG, Inc.* (D.D.C. 2002) 215 F.Supp.2d 143; *Bradford v. Rockwell Semiconductor Systems, Inc.* (4th Cir. 2001) 238 F.3d 549 (*Bradford*).) Still other courts have held the information presented by the employee before arbitration was too speculative to warrant invalidation of the

arbitration agreement, while retaining jurisdiction to reconsider the cost issue after arbitration. (See, e.g., *Mildworm v. Ashcroft* (E.D.N.Y. 2002) 200 F.Supp.2d 171; *Boyd v. Town of Hayneville, AL.* (M.D.Ala. 2001) 144 F.Supp.2d 1272.)

*Armendariz* and *Green Tree* agree on two fundamental tenets. First, silence about costs in an arbitration agreement is not grounds for denying a motion to compel arbitration. Second, arbitration costs can present significant barriers to the vindication of statutory rights. Nonetheless, there may be a significant difference between the two cases. Although *Green Tree* did not elaborate on the kinds of cost-sharing arrangements that would be unenforceable, dicta in that case, and several federal cases cited above interpreting it, suggest that federal law requires only that employers not impose "prohibitively expensive" arbitration costs on the employee (*Green Tree, supra*, 531 U.S. at p. 92 [121 S.Ct. at p. 522]), and that determination of whether such costs have been imposed are to be made on a case-by-case basis. *Armendariz*, on the other hand, categorically imposes costs unique to arbitration on employers when unwaivable rights pursuant to a mandatory employment arbitration agreement are at stake. Assuming that *Green Tree* and *Armendariz* pose solutions to the problem of arbitration costs that are in some respects different, we do not agree with amicus curiae that the FAA requires states to comply with federal arbitration cost-sharing standards.

As reviewed in the previous part of this opinion, Armendariz's cost-shifting requirement is not preempted by the FAA. It is not a barrier to the enforcement of arbitration agreements, nor does it improperly disfavor arbitration in comparison to other contract clauses. Rather, it is derived from state contract law principles regarding the unwaivability of certain public rights in the context of a contract of adhesion. We do not discern from the United States Supreme Court's jurisprudence on FAA preemption a requirement that state law conform precisely with federal law as to the manner in which such public rights are protected.

Furthermore, we considered and rejected in *Armendariz* a case-by-case approach to arbitration costs similar to that suggested by courts interpreting *Green Tree* based on the differential between projected arbitration and litigation fees. (*Blair, supra*, 283 F.3d at p. 609; *Bradford, supra*, 238 F.3d at p. 556.) As we stated: "To be sure, it would be ideal to devise a method by which the employee is put in exactly the same position in arbitration, costwise, as he or she would be in litigation. But the factors going into that calculus refuse to admit ready quantification. Turning a motion to compel arbitration into a mini-trial on the comparative costs and benefits of arbitration and litigation for a particular employee would not only be burdensome

on the trial court and the parties, but would likely yield speculative answers." (*Armendariz, supra*, 24 Cal.4th at p. 111.) The individualized consideration of employees' ability to pay arbitration costs that courts interpreting *Green Tree* contemplate (see *Blair, supra*, 283 F.3d at p. 609; *Bradford, supra*, 238 F.3d at p. 556) would further complicate the case-by-case calculation of prohibitive expense. We also rejected in *Armendariz* the notion that "there [would] be an advantage to apportioning arbitration costs at the conclusion of the arbitration rather than at the outset. Without clearly articulated guidelines, such a postarbitration apportionment would create a sense of risk and uncertainty among employees that could discourage the arbitration of meritorious claims." (*Armendariz, supra*, 24 Cal.4th at p. 111.) We see no reason to reevaluate these conclusions in light of *Green Tree* and its progeny.

In short, for reasons stated above, we do not believe that the FAA requires state courts to adopt precisely the same means as federal courts to ensure that the vindication of public rights will not be stymied by burdensome arbitration costs. We continue to believe that *Armendariz* represents the soundest approach to the problem of arbitration costs in the context of mandatory employment arbitration. We therefore conclude that on remand the court compelling arbitration should require the employer to pay in this case "all types of costs that are unique to arbitration." (*Armendariz, supra*, 24 Cal.4th at p. 113.)

### III. DISPOSITION

The judgment of the Court of Appeal is reversed insofar as it (1) permits enforcement of a clause allowing arbitral review only of awards greater than $50,000 and (2) requires arbitration of Little's *Tameny* claim, assuming he has adequately alleged such a claim, without requiring Auto Stiegler to pay arbitration forum costs as set forth in *Armendariz*. The cause is remanded to the Court of Appeal with instructions to direct the superior court to conduct further proceedings consistent with the views expressed in this opinion. In all other respects, the Court of Appeal's judgment is affirmed.

George, C. J., Kennard, J., and Werdegar, J., concurred.

**BAXTER, J.,** Concurring and Dissenting.—I agree with the majority that the "over $50,000" clause in the arbitration agreement was unconscionable, and therefore unenforceable, but was severable. On the other hand, I agree with Justice Brown that the special procedural rules for contractual arbitration of statutory claims, as set forth in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 [99 Cal.Rptr.2d 745, 6 P.3d

669] (*Armendariz*), should not be extended to so-called *Tameny* claims that an employee was wrongfully terminated in violation of public policy (see *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314]).[1]

I also dissent from the majority's decision to retain rules, first announced in *Armendariz*, for allocation of the costs of mandatory arbitration of statutory claims.[2] In my view, intervening United States Supreme Court authority sharply undermines the soundness of *Armendariz*'s approach, and should prompt us to alter our analysis of the cost issue.

To recap briefly: Code of Civil Procedure section 1284.2[3] states that unless the arbitral parties agree otherwise, arbitration costs shall be shared pro rata. Though section 1284.2 is an implied term of every arbitration agreement silent on costs, *Armendariz* deemed it preempted in part by the need to ensure that financial considerations would not deter an employee who had agreed to mandatory arbitration from using that forum to pursue a statutory claim of discrimination under the Fair Employment and Housing Act (FEHA). To resolve this problem, *Armendariz* held that notwithstanding section 1284.2, and regardless of any particularized showing of hardship or need, FEHA impliedly requires an employer to pay all the employee's "forum costs" of contractual arbitration of a FEHA claim. (*Armendariz*, *supra*, 24 Cal.4th 83, 107-113.)

Thereafter, the United States Supreme Court decided *Green Tree Financial Corp.-Ala. v. Randolph* (2000) 531 U.S. 79 [121 S.Ct. 513, 148 L.Ed.2d 373] (*Green Tree*). *Green Tree* held that where Congress has evinced no intent to limit the arbitrability of a particular federal statutory claim, a party seeking to avoid mandatory contractual arbitration of such a claim has the burden of showing that the costs of arbitration he is likely to incur will render that forum "prohibitively expensive." (*Id.* at p. 92 [121 S.Ct. at p. 522].) To deny contractual arbitration on the mere risk of undue cost, said *Green Tree*, "would undermine the 'liberal federal policy favoring arbitration agreements . . . .' [citation] [and] would also conflict with our prior holdings that the party resisting arbitration bears the burden of proving that the

[1] Throughout this opinion, I use the terms "contractual arbitration," "arbitration contract," and "arbitration clause" to refer to agreements for mandatory arbitration of disputes that may arise *in the future*. As the majority indicate, different considerations apply to parties' agreements to arbitrate disputes that have already arisen.

[2] I use the term "statutory claims" throughout the following discussion because, like Justice Brown, I would not extend the cost protections of *Armendariz* beyond rights arising directly from statute to other causes of action, such as *Tameny* claims, which the majority may consider "nonwaivable."

[3] All further unlabeled statutory references are to the Code of Civil Procedure.

claims at issue are unsuitable for arbitration. [Citations.]" (*Id.* at p. 91 [121 S.Ct. at p. 522].) Central to *Green Tree*'s analysis, of course, was the rule of the Federal Arbitration Act (FAA; 9 U.S.C. § 2) that arbitration agreements involving interstate commerce may be invalidated only on grounds applicable to contracts generally. (*Green Tree, supra,* at p. 89 [121 S.Ct. at p. 521].)

Despite *Green Tree,* the instant majority retain *Armendariz*'s "employer always pays" cost formula. The majority say *Green Tree* does not strictly require us to alter *Armendariz*'s application of California contract law to the issue of arbitration costs. On that technical point, the majority may or may not be correct. As *Green Tree* makes clear, however, the FAA, which governs both federal and state arbitration law, was adopted " 'to reverse the longstanding judicial hostility to arbitration agreements . . . and to place [such] agreements upon the same footing as other contracts.' " (*Green Tree, supra,* 531 U.S. 79, 89 [121 S.Ct. 513, 521], quoting *Gilmer v. Interstate/ Johnson Lane Corp.* (1991) 500 U.S. 20, 24 [111 S.Ct. 1647, 1651, 114 L.Ed.2d 26] (*Gilmer*).) *Green Tree* holds in essence that even where the vindication of statutory rights is at stake, when courts interfere with an arbitration agreement by *presuming* undue cost to one party, they exhibit particular "hostility" and suspicion toward contractual arbitration, which the FAA was intended to prevent.

At direct odds with this principle is the current California requirement that the employer must always pay the employee's "forum costs" of arbitrating a statutory claim, regardless of actual need, and contrary to a California law that implies a cost-sharing term in every arbitration contract unless the parties expressly agree otherwise. I believe *Green Tree* warrants reconsideration of the *Armendariz* majority's views on cost allocation.

It should be noted that in articulating California's minimum requirements for mandatory contractual arbitration of statutory claims, *Armendariz* placed primary reliance on a federal case, *Cole v. Burns Intern. Security Services* (D.C. Cir. 1997) 105 F.3d 1465 (*Cole*). Among other things, *Cole* concluded that an employee could not be forced by contract to arbitrate federal statutory rights if also required to pay any part of the arbitrator's fee. (*Id.* at p. 1485.) *Armendariz* quoted with approval *Cole*'s assertion that in *Gilmer, supra,* 500 U.S. 20, the high court had " 'endorsed a system of [mandatory contractual] arbitration [of federal statutory claims] in which employees are not required to pay for the arbitrator [and] [t]here [was] no reason to think that the Court would have approved arbitration in the absence of this arrangement.' " (*Armendariz, supra,* 24 Cal.4th 83, 107-108, quoting *Cole,*

*supra*, at p. 1484.)[4] *Green Tree* has since destroyed that assumption. While the *Green Tree* majority did not expressly disapprove *Cole*, they essentially negated *Cole*'s conclusions about the cost-sharing requirements of a valid scheme for arbitration of federal statutory claims.

Under the circumstances, I would overrule *Armendariz*'s arbitrary cost allocation formula. In its place, I would adopt *Green Tree*'s principle that if a party resists mandatory contractual arbitration of a statutory claim on grounds of undue cost, he must make a timely, particularized showing of the expected expense, and must also demonstrate that, in his particular case, this cost would make arbitration prohibitively expensive as compared to court litigation. Evidence on this issue could be presented to the court deciding a motion to compel arbitration. If the party opposing arbitration demonstrated prohibitive expense, the court could grant the motion to compel upon the condition that the proponent of arbitration accept, with the caveat discussed below, a more equitable allocation of costs.

I close with one final point. In light of the strong policy favoring arbitration on the terms agreed by the parties, interference with the arbitration contract's cost provisions, express or implied by statute, should be countenanced only to the degree actually necessary to assure that mandatory resort to the arbitral forum has not deterred vindication of a statutory claim. For this reason, whatever pre-arbitration reallocation of costs may be necessary to ensure that the claimant is not deterred in advance, this allocation should be tentative only, and should be subject to readjustment once the true expenses and rewards of the arbitral proceeding are known.

In hindsight, it may become apparent that the actual costs of arbitration, with its faster, simpler, and more economical procedures, were less than the probable expenses of resolving the same claim in court. Even if they were greater, the difference may prove so minimal, given the claimant's general financial ability or the magnitude of his final recovery, that forcing the other party to absorb all the claimant's forum costs, contrary to their agreement, is an unfair interference with contractual arbitration. Under these circumstances, the party who "fronted" costs for the claimant should be reimbursed for the excess.

---

[4]*Cole* conceded that cost allocation was not an issue in *Gilmer, supra*, 500 U.S. 20. This, *Cole* explained, was because the arbitration in *Gilmer*, between a brokerage firm and its employee, was subject to a standard securities industry practice that the employer pays the arbitrator's fees. (*Cole, supra*, 105 F.3d 1465, 1483.)

I see no reason why the arbitrator cannot, subject to appropriate judicial review, reassess the cost allocation at the conclusion of the proceedings.[5] "When apportioning costs, the arbitrator should consider the magnitude of the costs unique to arbitration, the ability of the employee to pay a share of these costs, and the overall expense of the arbitration as compared to a court proceeding." (*Armendariz, supra,* 24 Cal.4th 83, 129 (conc. opn. of Brown, J.).) As indicated above, the amount actually recovered by the claimant in arbitration should also be a relevant consideration. "Ultimately, any apportionment should ensure that the costs imposed on the employee, if known at the onset of litigation, would *not* have deterred her from enforcing her statutory rights or stopped her from effectively vindicating these rights. [Citations.]" (*Ibid.*)

Believing *Armendariz* was dispositive, the employee in this case (Little) never sought to make a showing of prohibitive expense. Believing *Green Tree* was dispositive, the Court of Appeal simply held that the arbitration agreement's silence on costs was no bar to its unconditional enforcement. As I have indicated, I would overrule *Armendariz* to the extent it is inconsistent with *Green Tree.* Thus, if I believed Little's *Tameny* claim were entitled to *Armendariz* protections, I would support a remand to allow Little to make the requisite showing.

I would reverse the judgment of the Court of Appeal insofar as it permits enforcement of a clause allowing arbitral review only of awards greater than $50,000, and would affirm the Court of Appeal's judgment in all other respects. If I agreed with the majority that *Armendariz* protections applied to *Tameny* claims—which I do not—I would additionally reverse the Court of Appeal's judgment insofar as it requires Little to arbitrate this claim without allowing him to demonstrate that pro rata sharing of forum costs would make arbitration prohibitively expensive for him, and I would remand to the Court of Appeal with directions to instruct the trial court to conduct further proceedings consistent with the views expressed in this opinion.

Chin, J., and Brown, J., concurred.

**BROWN, J.,** Concurring and Dissenting.—Like the majority, I find the appellate arbitration provision in the arbitration agreement unconscionable. (Maj. opn., *ante,* at p. 1069.) I also agree that this "provision should be

---

[5] I assume that when granting a motion to compel contractual arbitration (§ 1281.2), the superior court could condition its order *both* on a tentative reallocation of costs, and on the parties' agreement that the court would retain power to review any readjustment later ordered by the arbitrator. Moreover, a power to review cost readjustments should also be within the court's jurisdiction in the event either party moves to vacate the arbitration award. (§ 1285 et seq.)

severed and the rest of the arbitration agreement enforced." (*Ibid.*) I, however, disagree with the majority's application of the requirements set forth in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*) to an action alleging wrongful termination in violation of public policy (*Tameny* claim) (see *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 178 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314]).[1] Unlike the majority, I found *Brown v. Wheat First Securities, Inc.* (D.C. Cir. 2001) 257 F.3d 821 (*Brown*) persuasive and would not apply *Armendariz* to *Tameny* claims.

"In *Armendariz*, we held that arbitration of claims under the [California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.)] is subject to certain minimal requirements . . . ." (Maj. opn., *ante*, at p. 1076.) We imposed these requirements despite the preemptive scope of the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) based on "[t]he United States Supreme Court's dictum that a party, in agreeing to arbitrate a statutory claim, 'does not forgo the substantive rights afforded by the statute [but] only submits to their resolution in an arbitral . . . forum.' " (*Armendariz, supra,* 24 Cal.4th at p. 99, quoting *Mitsubishi Motors v. Soler Chrysler-Plymouth* (1985) 473 U.S. 614, 628 [105 S.Ct. 3346, 3354, 87 L.Ed.2d 444] (*Mitsubishi*).) Because the Legislature enacted FEHA with the express intention of safeguarding certain rights for the benefit of the public at large, we concluded that neither federal nor state arbitration laws preclude our imposition of restrictions on the arbitration of FEHA claims. (See *Armendariz, supra,* 24 Cal.4th at pp. 100-101.) In doing so, we carefully limited our holding to arbitrations of *statutory* claims.

Our heavy reliance on *Cole v. Burns Intern. Security Services* (D.C. Cir. 1997) 105 F.3d 1465 (*Cole*) demonstrates the limited scope of our holding in *Armendariz*. (See *Armendariz, supra,* 24 Cal.4th at pp. 101-102.) In *Cole*, the District of Columbia Circuit Court of Appeals imposed the same requirements we imposed in *Armendariz* (*Cole/Armendariz* requirements) to the arbitration of claims under title VII of the Civil Rights Act of 1964 (Title VII). (*Cole, supra,* 105 F.3d at p. 1482.) It imposed these requirements because of the importance of respecting *congressional* intent as expressed in "public statutes like the [Age Employment in Discrimination Act] and Title VII." (*Cole*, at p. 1482.) Ascertaining the unwaivability of the rights conferred by these public statutes from their text, history, and purpose and citing this unwaivability as evidence of congressional intent, the court found that

---

[1] For the reasons stated in Justice Baxter's concurring and dissenting opinion, *ante*, I also disagree with the majority's refusal to modify *Armendariz*'s cost requirements in light of *Green Tree Financial Corp.-Ala. v. Randolph* (2000) 531 U.S. 79 [121 S.Ct. 513, 148 L.Ed.2d 373].

Congress intended to provide certain procedural protections to employees seeking to vindicate these rights. (*Ibid.*) Thus, *Cole* did not impose additional requirements on the arbitration of these statutory claims based solely on their unwaivability or public policy concerns.

The District of Columbia Circuit Court of Appeals made this expressly clear in *Brown*. In *Brown*, the court refused to impose the *Cole/Armendariz* requirements on the arbitration of a common law claim virtually identical to the *Tameny* claim at issue here. (*Brown, supra,* 257 F.3d at p. 825.) As the court explained, *Cole* was limited "at vital points to statutory rights" (*Brown*, at p. 825), and "our central rationale—respecting congressional intent—does not extend beyond the statutory context" (*ibid.*). The court further noted that the FAA preempts "state restrictions on the enforcement of arbitration agreements" and necessarily precludes courts from restricting the arbitration of common law claims. (*Brown*, at p. 826.) Finally, the court observed that the creation of judicially crafted public policy exceptions to the FAA would, as a practical matter, subject the arbitration of most, if not all, tort and contract claims to the *Cole/Armendariz* requirements. (*Brown*, at p. 826.)

Notwithstanding the majority's arguments to the contrary, I believe *Brown* should guide our decision here. As explained above, we carefully limited the application of *Armendariz* to statutory rights. (See *ante*, at p. 1090.) And our rationale for imposing the *Cole/Armendariz* requirements on the arbitration of FEHA claims—respecting legislative intent—does not extend beyond the statutory context. (See, *ante*, at p. 1090.)

Indeed, we are precluded from doing so by both Congress and our own Legislature. Congress enacted the FAA " 'to assure those who desired arbitration and whose contracts related to interstate commerce that their expectations would not be undermined . . . by state courts . . . .' " (*Southland Corp. v. Keating* (1984) 465 U.S. 1, 13 [104 S.Ct. 852, 859, 79 L.Ed.2d 1].) Recognizing "the widespread unwillingness of state courts to enforce arbitration agreements" (*ibid.*), Congress intended the FAA "to be a broad enactment appropriate in scope to meet the large problems Congress was addressing" (465 U.S. at p. 14 [104 S.Ct. at p. 860])—i.e., judicial hostility to arbitration—and "unencumbered by state-law constraints" (*id.* at p. 13 [104 S.Ct. at p. 859]). As such, the FAA preempts all state laws and rules disfavoring arbitration. (See *Allied-Bruce Terminix Cos. v. Dobson* (1995) 513 U.S. 265, 272 [115 S.Ct. 834, 838-839, 130 L.Ed.2d 753].)

Of course, Congress is free to circumscribe the scope of its enactments. (*Shearson/American Express Inc. v. McMahon* (1987) 482 U.S. 220, 226 [107 S.Ct. 2332, 2337, 96 L.Ed.2d 185].) Consistent with this principle, the

United States Supreme Court has recognized that the FAA does not govern if " 'Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.' " (*Gilmer v. Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20, 26 [111 S.Ct. 1647, 1652, 114 L.Ed.2d 26] (*Gilmer*), quoting *Mitsubishi, supra,* 473 U.S. at p. 628 [105 S.Ct. at pp. 3354-3355].) Such an intention may, however, be discerned *only* from "the text [of a federal statute], its legislative history, or an 'inherent conflict' between arbitration and" that statute's underlying purposes. (*Gilmer, supra,* 500 U.S. at p. 26 [111 S.Ct. at p. 1652], quoting *McMahon, supra,* 482 U.S. at p. 227 [107 S.Ct. at p. 2338].) Thus, in the absence of a statute evidencing a clear congressional intent to restrict arbitration, the FAA controls and precludes courts from imposing their own arbitration-specific restrictions.[2] (See *Mastrobuono v. Shearson Lehman Hutton, Inc.* (1995) 514 U.S. 52, 55, 58 [115 S.Ct. 1212, 1215, 1216-1217, 131 L.Ed.2d 76] (*Mastrobuono*) [holding that the FAA precludes the enforcement of a *judicially created rule* despite its basis in public policy]; see also *McMahon, supra,* 482 U.S. at p. 227 [107 S.Ct. at p. 2338] [to defeat application of the FAA, the parties opposing arbitration "must demonstrate that Congress intended to make an exception to the [FAA] for claims arising under" statute, "an intention discernible from the text, history, or purposes of the statute"].)

Similarly, California's arbitration scheme precludes California courts from restricting arbitrations in the absence of an express legislative intent to do so. "Title 9 of the Code of Civil Procedure . . . represents a comprehensive statutory scheme regulating private arbitration in this state." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 [10 Cal.Rptr.2d 183, 832 P.2d 899].) This scheme establishes "that arbitration agreements will be enforced *in accordance with their terms.*" (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 836, fn. 10 [88 Cal.Rptr.2d 366, 982 P.2d 229].) Absent certain statutorily enumerated grounds not relevant here (see Code Civ. Proc., § 1281.2), courts must enforce an arbitration agreement *as written.* While the Legislature may create exceptions to this strong statutory policy in favor of arbitration and selectively limit arbitrations, we may not. (See *Armendariz, supra,* 24 Cal.4th at p. 98 [recognizing that the Legislature may "selectively prohibit[] arbitration in certain areas"].)

Nonetheless, the majority does just that. A *Tameny* claim is a common law cause of action created by this court—and not by the Legislature. (See *Green*

---

[2]We have extended this rationale of *Gilmer* to state legislative enactments and restricted the arbitration of certain statutory causes of action serving a transcendent public purpose as determined by a state legislature. (See *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1083 [90 Cal.Rptr.2d 334, 988 P.2d 67] (*Broughton*).) While I reluctantly concede that *Broughton* is binding until the United States Supreme Court decides otherwise (but see *Broughton, supra,* 1066, 1088-1103 (dis. opn. of Chin, J.)), neither this court nor the United States Supreme Court has ever suggested that a federal or state court may, on its own initiative, restrict the arbitration of a common law cause of action.

*v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 71 [78 Cal.Rptr.2d 16, 960 P.2d 1046] (*Green*) ["Although our Legislature has determined that an employment contract is generally terminable at either party's will . . . , *we have created a narrow exception to this rule* by recognizing that an employer's right to discharge an at-will employee is subject to limits that fundamental public policy imposes" (italics added, fn. omitted)].) Thus, *Tameny* claims are a judicial—and not a legislative—construct, and the public policy underlying these claims "is inconsequential as a measure of [the Legislature's] interest in the stated policy." (*Brown, supra,* 257 F.3d at p. 826.) As a result, the majority's extension of *Armendariz* violates the FAA and our own statutory arbitration scheme.

The statutes the majority cites to establish the unwaivability of *Tameny* claims are inapposite. Civil Code section 3513, by its terms, applies only to laws enacted by the Legislature. Meanwhile, Civil Code section 1668 merely declares that contracts that "directly or indirectly . . . exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against" public policy. An arbitration agreement does not, however, exempt anyone from responsibility for his or her wrongdoing. Rather, the agreement merely changes the forum in which the determination of responsibility is made. (See *Gilmer, supra,* 500 U.S. at p. 26 [111 S.Ct. at p. 1652] [parties compelled to arbitrate their claims merely " 'submit[] to their resolution in an arbitral, rather than a judicial, forum' "].) Thus, Civil Code section 1668 does not evince a legislative intent to impose any restrictions on the arbitration of *Tameny* claims.

In any event, the majority's focus on the unwaivability of *Tameny* claims is misplaced. To evade FAA preemption, the majority purports to apply a generally applicable contract defense by "refusing to enforce a contractual term . . . that . . . would force a party to forgo unwaivable public rights . . . ." (Maj. opn., *ante,* at p. 1079.) Thus, the majority sees "no reason under *Armendariz*'s logic to distinguish between unwaivable statutory rights and unwaivable rights derived from common law." (*Ibid.*) The majority's logic, however, is specious. The majority finds an agreement to arbitrate *Tameny* claims violative of public policy absent satisfaction of the *Cole/Armendariz* requirements *solely* because of alleged deficiencies unique to an arbitral forum established by an otherwise valid agreement. In doing so, the majority necessarily premises its holding on plaintiff's purported inability to vindicate his common law claim in the arbitral forum and creates a rule specific to arbitration agreements. As such, the majority's holding rests on a "suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants" rejected long ago. (*Rodriguez de Quijas v. Shearson/Am. Exp.* (1989) 490 U.S. 477, 481 [109 S.Ct.

1917, 1920, 104 L.Ed.2d 526].) This is true regardless of whether the claim is waivable or not.

Thus, the unwaivability of *Tameny* claims is a red herring. The crucial question is whether there is any evidence of a congressional (see *Gilmer, supra*, 500 U.S. at p. 26 [111 S.Ct. at p. 1652]) or legislative intent (see *Broughton, supra*, 21 Cal.4th at p. 1083) to place restrictions on the arbitration of *Tameny* claims. While the unwaivability of a statutory right established by the statute's text, history, or purpose may evidence such an intent (see *Cole, supra*, 105 F.3d at p. 1482; *Armendariz, supra*, 24 Cal.4th at p. 100), a judicial finding of unwaivability for public policy reasons cannot. Indeed, the public policy exception the majority adopts subjects most, if not all, tort claims to the *Cole/Armendariz* requirements. "All claims not based on contract—including, for example, . . . defamation and tortious interference claims . . .—implement values that society has in one way or another thought deserving." (*Brown, supra*, 257 F.3d at p. 826.) Under this public policy rationale, "it is hard to see what falls outside it." (*Ibid.*) For example, under the majority's logic, any arbitration of an intentional tort claim must abide by the *Cole/Armendariz* requirements because such claims are unwaivable under Civil Code section 1668.

In this respect, this case is no different from *Mastrobuono*. In *Mastrobuono*, the United States Supreme Court held that the FAA preempted a judicially created rule prohibiting arbitrators from awarding punitive damages even though a state court created the rule for public policy reasons. (*Mastrobuono, supra*, 514 U.S. at pp. 55, 58 [115 S.Ct. at pp. 1215, 1216-1217].) The same reasoning precludes our application of the judicially created *Cole/Armendariz* requirements to the arbitration of *Tameny* claims. By creating a rule applicable only to arbitration provisions, the majority necessarily violates the FAA. (See *Doctor's Associates, Inc. v. Casarotto* (1996) 517 U.S. 681, 687 [116 S.Ct. 1652, 1656, 134 L.Ed.2d 902] ["Courts may not, however, invalidate arbitration agreements under state laws applicable *only* to arbitration provisions"].)

Our extension of *Armendariz* to *Tameny* claims therefore usurps Congress's authority to establish "the supreme law of the land" (U.S. Const., art. VI, cl. 2) and the Legislature's "responsibility to declare the public policy of the state" (*Green, supra*, 19 Cal.4th at p. 71). Moreover, by imposing arbitration-specific restrictions that have no congressional or legislative basis, the majority not only undermines the "liberal federal policy favoring arbitration" (*Moses H. Cone Hospital v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 24 [103 S.Ct. 927, 941, 74 L.Ed.2d 765]), but also contravenes California's "strong public policy in favor of arbitration as a speedy and

relatively inexpensive means of dispute resolution." (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street* (1983) 35 Cal.3d 312, 322 [197 Cal.Rptr. 581, 673 P.2d 251]). Even if *Tameny* claims cannot be effectively vindicated absent imposition of the *Cole/Armendariz* requirements, both Congress and our Legislature have declined to impose them. By disregarding their intentions, the majority appears intent on turning "the judicial clock backwards to an era of hostility toward arbitration." (*Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 714 [131 Cal.Rptr. 882, 552 P.2d 1178].) Indeed, this court appears to be "chip[ping] away at" United States Supreme Court precedents broadly construing the scope of the FAA "by indirection," despite the high court's admonition against doing so. (*Circuit City Stores, Inc. v. Adams* (2001) 532 U.S. 105, 122 [121 S.Ct. 1302, 1313, 149 L.Ed.2d 234].) I therefore urge the high court to clarify once and for all whether our approach to arbitration law comports with its precedents.

Baxter, J., and Chin, J., concurred.